# Staunton.

## MASSIE'S ADM'R V. HEISKELL'S TRUSTEE & ALS.

### SEPTEMBER 24TH, 1885.

1. DEEDS—*Construction – Case at bar.*—The construction of the deeds of conveyance from H. to P. and from P. to S. and P., passed into *res judicata* by the decision of this court in this cause when it was here in 1879. *Preston and Massie* v. *Heiskell's trustee*, 32 Gratt. 48.

2. MISTAKE—*Equitable relief.*—It is one of the original grounds of equity jurisdiction to amend an instrument made under a mutual mistake of fact, so as to do justice to all concerned, and place them as nearly as practicable in *statu quo*. And it matters not whether the mistake was as to the factors, the mode, or the result of the calculation.

3. IDEM—*Equity does nothing by halves.*—Where, under mutual mistake of fact, vendor grants more than vendee bargained or paid for, and a court of equity affords relief upon vendor's prayer, by allowing him compensation for the excess, his claim for such compensation is not a mere personal demand against vendee, but the title is deemed to be still in vendor as to such excess as security for the payment of said compensation, although the deed, as executed, reserved no lien for the purchase money.

4. IDEM—*Purchasers for value without notice—Set-offs—Encumbrances—Warranty.*—Vendee, to whom, under mutual mistake of fact, vendor has conveyed more than was bargained or paid for, cannot be regarded, as to such excess, as a purchaser for value without notice. But against vendor's claim for compensation for such excess, vendee may set off any counter-claim he may have for money expended by him in clearing the property of encumbrances existing thereon when the conveyance was made. Vendee's right to set off such counter-claims, is not founded on the idea of a breach of warranty, and is not affected by the question whether the warranty of the vendor was *general* or *special*, but rests on the principle that "*he that asks equity must do equity.*"

5. STATUTE OF LIMITATIONS—*Mistake, &c.—Discovery.*—Cases of fraud, trust and mistake, are not within the statute of limitations. *Hunter* v. *Spottswood*, 1 Wash. 145. At all events, in equity, in cases of mistake, as in cases of fraud, the statute does not begin to run until the discovery of the mistake. *Rowe* v. *Bentley,* 29 Gratt. 760.

6. MISTAKE—*Presumption of payment.*—Claim for purchase money for excess of land conveyed under mutual mistake of fact, is unaffected by any lapse of time short of the period sufficient to raise the presumption of payment. And the existence of deeds conveying title and reserving no lien, cannot reduce the period of limitation to five years, because the averment and proof of the mistake, required the abrogation of the deed, at least *quoad* the purchase money for the excess over what was sold and paid for.

7. LACHES—*Abandonment of rights.*—It is well settled that *laches* cannot be predicated of those who are ignorant of their rights. Such defence is only permitted in equity to defeat an acknowledged right, on the ground of its offering evidence that the right has been abandoned. *Nelson* v. *Carrington*, 4 Munf. 332–43.

Argued at Wytheville, and decided at Staunton.

This is an appeal from a decree of the circuit court of Washington county, rendered on the 25th day of February, 1884, in the cause of D. Trigg, trustee of W. K. Heiskell, *against* W. A. Stuart, G. W. Palmer, T. L. Preston, Holston Salt and Plaster Company and N. H. Massie; and the cross-cause of N. H. Massie and T. L. Preston *against* Trigg, Stuart & Palmer, and said company.

This cause is a sequel to the cause of *Preston and Massie* v. *Holston Salt and Plaster Company*, 32 Gratt. 48, where its history is fully detailed. Only such outline will be here set forth as is essential to comprehend the points decided.

By deed of November, 1858, Heiskell conveyed to Preston all his right, title and interests, legal and equitable, in and to King's Salt Works estate, including the Hunter, 1-24, and the then Claiborne interests, stated to be 2-540 each, of the whole.

By deed of July, 1859, Preston conveyed all of his property, including his interests in King's Salt Works estate to Gibbony,

in trust to secure his (Preston's) debts. Gibbony, trustee, paid the debts without selling those interests.

By deed of July, 1862, Preston, Heiskell and Gibbony, united in annulling the deed of November, 1858, and Heiskell re-conveyed his said interests in the King's Salt Works estate, except his said Hunter interest, to Preston, using same language as before.

By deed of 1869, Heiskell conveyed to D. Trigg, trustee, all his interests in said estate; and by deed of 1875, Trigg, as such trustee, conveyed the same interests to Stuart & Palmer, for $18,500, in the stock of the Holston Salt and Plaster Company, which had been incorporated of the shareholders of said estate, on condition that said $18,500 of said stock be increased or diminished, according as the said interests should prove to be greater or less than was supposed.

In April, 1878, Trigg, trustee, filed his bill in the cause, insisting that the said then Claiborne interests were 11-540, instead of 6-540, and that the excess, 5-540, did not pass by the deed of Heiskell to Preston. The court below held, upon the bill taken for confessed as to Preston, that the deed from Heiskell to Preston did *not* convey the said excess, and directed an account of rents and profits. At the succeeding term, Preston applied for leave to file his answer, wherein he said that if he was to make compensation for the excess, there were encumbrances, set out by him, on the interests sold by him to Heiskell, which the latter was to, but did not discharge, and which he discharged, and asked to be compensated therefor. N. H. Massie also tendered his petition, setting up Preston's claim, demanding to stand in his shoes as his assignee, by virtue of an assignment from Preston to him, therewith exhibited, and asking to be admitted as a party defendant, and to be allowed to file his answer. The court below refused to allow Preston's answer to be filed, except as a petition for a rehearing of the decree; denied Massie's petition, overruled the prayer to re-hear the decree, and decreed that Heiskell's trustee was entitled to the excess of 5-540.

This court, in July, 1879 (32 Gratt. 48), reversed the decree; allowed Massie to be made a party, and the answers of himself and Preston to be filed; held that the two deeds from Heiskell to Preston were so connected that the court could look to the deed of 1858 in construing the deed of 1862; that the latter conveyed the interests derived by Heiskell from the three Claibornes; that this was sufficient description to pass the whole interest of Heiskell; and that, it being apparent that such was the intention of both parties, the addition, stating the amount of the interest derived from the three Claibornes, would not restrict the operation of the deed; but that, as both Heiskell and Preston were under a mistake as to the amount of the interests derived by Heiskell from the three Claibornes, and the contract and conveyance were made under that mistake, Heiskell's trustee was entitled to the excess over what Heiskell was supposed to possess, and sent the cause back; yet directed that Preston should file his cross-bill to put in issue the matters between him and Heiskell, and the other defendants.

After the cause had been remanded, in April, 1880, Trigg, trustee, filed an amended bill, reciting the allegations of his original bill, and the proceedings in this court, alleging the total insolvency of Preston, and praying that his lien on the 5-540 excess, be enforced, or that the deeds be re-formed, investing him with title to that excess, and for general relief. This amended bill was at October term, 1880, demurred to and answered by Stuart & Palmer and by said company. They said that they had made no contract with the plaintiff, or his grantor, in respect to the Claiborne interests; denied that he had any right to any part of the King's Salt Works estate; insisted that this court had adjudicated that the entire Claiborne interests had passed by the deed of Heiskell to Preston; and denied that any lien was retained, or that any purchase money was due him.

Preston also demurred to and answered the amended bill. He admits the sale from Heiskell to himself, and the mistake

of both parties in supposing the Claiborne interests were only 6-540 of the King's Salt Works estate; but insists that Heiskell intended to sell, and that he intended to buy Heiskell's entire interest. He admits that the mistake should be corrected, but denies that Heiskell has been prejudiced, because when the mistake was corrected, it would be found that he had been largely overpaid for the entire interest. He also admits his legal accountability to Heiskell, for the mistake, but contends that it is only a personal demand against him, which is no lien of any kind on anything; and disputes the plaintiff's right to have Heiskell's deed to him so re-formed as to invest the plaintiff with title to the 5-540 excess. And he alleges that his claim against Stuart & Palmer for the balance due upon the corrected values of the Claiborne interests, had been assigned by him in March, 1875, to his co-defendant, N. H. Massie, for value received, which balance embraced also the amount due him on the $3000, which in 1862 was left by him in Stuart & Palmer's hands to discharge encumbrances on the interests conveyed to them by him.

Massie also demurred to and answered the bill; and more fully details the matters set up in Preston's answer. He contends that the claim made by the plaintiff, if allowed, would greatly prejudice him, because he was a purchaser for value of Preston's claim against Stuart & Palmer, which arose out of Preston's conveyance to them in 1862, which purchase embraced not only the balance on the $3,000 scaled obligation of October, 1862, but also the corrected values of the Claiborne and the James King interests; and that the prejudice would be the greater on account of Preston's insolvency. Massie says, that when Heiskell conveyed to Preston, and the latter conveyed to Stuart & Palmer, the parties were ignorant of the amount of those interests, and that the mistake was only discovered by Preston and himself in 1875; and claims that the amount due him as Preston's assignee is 6-284, with interest.

In obedience to the decree of this court, Preston and Massie also filed their cross-bill, making all the other parties defendants. Therein they set out substantially the allegations in their answers. They state that the several interests conveyed by Heiskell to Preston, and by the latter to Stuart & Palmer, valuing the entire estate at $350,000, were computed on the basis following, to wit:

" Trigg and Branch's interest, 1-44th, . . $ 2,430 55
    James King's interest, 91-5400ths, . . .    5,898 12
    Claiborne interests, 1-90th, . . . . .    3,888 80

            Total value, , . . . . . .  12,217 55
            Cash paid down, . . . . .    9,217 55

    Leaving a supposed balance of . . . . . $3,000 00 "

They charge that by a scaled contemporaneous agreement, the $3000 was left with Stuart & Palmer to indemnify them against any loss by reason of encumbrances on the interests conveyed. They also charge that they discovered the real amount and value of their interests about March 1st, 1875, and that the following is a true statement thereof, to wit:

" Trigg and Branch's interests, 1-44th, . $ 2,430 55
    James King's interests, 77-4536ths, . . .   5,941 36
    Claiborne interests, 11-540ths, . . . . .   7,129 64

            Making true amount of sale,    15,561 55
            Deduct cash payment, . . . .   9,217 55

    Leaving balance due Preston, . . . . . $6,284 00 "

Which entire balance was assigned by Preston, as before stated.

They further allege that Massie informed Stuart in 1875 of the assignment, and demanded a settlement on the basis last stated; that Stuart examined it with him on several occasions, and declared that a settlement could be made without suit, and from time to time asked delay, until February 18th, 1878, when he wrote to Massie: "If you cannot give me more time, you must bring your suit. I cannot complain. Perhaps an adjudication by a court may be safest." This and other letters of like import, were filed as exhibits; and that afterwards, in April, 1878, Trigg, trustee, brought this suit.

The plaintiffs in the cross-bill aver that they made this explanation in advance to shield themselves from any imputation of *laches* in presenting their claims, should any such be made. They admit that Stuart & Palmer are entitled to credit for any sums actually paid by them to clear the interests conveyed from encumbrances. And they repeat that the balance is due to Massie alone, and not to the plaintiff. In conclusion, they pray that Stuart & Palmer answer, and say how much they *actually* paid out for the purpose, and that they be required to pay to Massie the sum of $6284, with interest from October 1st, 1862, subject to credit only for the sums so actually paid out, and for general relief.

Stuart & Palmer and the company answered. They do not admit that a mistake was made in estimating and in computing the value of those interests, though Preston's deed to them did pass all that Heiskell's deed passed to Preston. They say that Preston had long been a joint-owner of King's Salt Works estate, knew all about it and his co-tenants, and everything connected with the title, or was at least in a situation to know; and that if there was any mistake, it was merely Preston's own error in the calculation, which, they say, "when there is no averment of fraud, a court of equity will not correct." They acknowledge the deposit of $3000, to satisfy encumbrances, but say it was Confederate currency, and should be scaled at two

and a half for one, according to the scale adopted by the court; that the whole transaction was in that currency; that the interests encumbered were the James King and the Claiborne interests; that the encumbrance on the former was $1567.25, as of June 8th, 1869; that the encumbrance on the latter was the dower of Sarah Claiborne, widow of James King, Sr., who after his death, married .Thomas Claiborne; and that an account would be necessary to ascertain the amount of their credits; but that their set-offs would exceed the amount deposited when so scaled. They also acknowledge the conversations and correspondence alleged in the cross-bill, but deny that they meant to admit the claim set up therein. In conclusion they plead the statute of limitations, and *laches*, as they had already done, in bar of the claim set up by the plaintiff, Trigg, trustee.

Trigg, trustee, also demurred to and answered said cross-bill, disclaiming in his answers all knowledge of the dealings of Stuart & Palmer with Preston, and of the latter with Massie. He denies that the assignment to Massie embraced the amount due on the corrected values of the interests conveyed. He avers that Massie took the assignment with full knowledge of the mistake, and that he stands only in the position of his assignor. He denies that Heiskell had been overpaid in any view, and the right of Massie to collect of Stuart & Palmer the corrected values, and to turn him, Trigg, trustee, over to Preston, who was insolvent. Depositions were taken proving Preston's insolvency.

In January, 1880, the death of Massie was suggested, and the cause was revived in the name of John B. Moon, his administrator. In May, 1882, exceptions to the answer of Stuart & Palmer were sustained, and they were given until August, 1882, to file their answer specifically stating the sums *actually* paid in removing the encumbrances. And the plaintiff in the original bill, insisting on a hearing thereof, and a decision of the principles of the cause, so far as that could be done before

the hearing of the cross-bill, the cause was brought on and heard on the bill as amended, taken for confessed as to Heiskell's administrator, the demurrers, the plea of the statute of limitations, the answers, the general replications, exhibits, depositions, and arguments of counsel: and the court overruled the demurrers, adjudged the plea of the statute of limitations insufficient, because unsupported by any denial of the recent discovery of the mistake· stated in the bill; and decreed that "under the circumstances, and upon the principles of equity," Trigg, trustee, was entitled to be substituted to the rights of Preston against Stuart, & Palmer for compensation for the deficiency in the price of the Claiborne interests in King's Salt Works, the subject of controversy here.   The circuit court further decreed that Massie took his assignment with knowledge of the rights of Heiskell's trustee and subject to those rights, on his belief that upon an equitable settlement, after charging Preston with the corrected values of the Claiborne interest, Heiskell would be indebted to Preston; and that the right of Heiskell's trustee is limited to Preston's right against Stuart & Palmer; but that to a final determination of the cause, an account and a hearing of the cross-bill would be necessary.

From this decree an appeal was allowed Massie's administrator; and in July, 1883, this court reversed the decree because the causes had been prematurely heard, saying that "until the cause is ready for hearing on the cross-bill the rights of the parties touching the question of compensation for the conveyance of the Claiborne interests could not be determined," and remanded the cause for further proceedings accordingly.

After the cause had been thus twice remanded, Stuart & Palmer filed their answer, January 26th, 1884, to the cross-bill, and the plaintiffs therein replied generally.   In their answer they make a special statement of encumbrances on the interests conveyed to them, to wit:

| | | |
|---|---:|---:|
| "On James King's interest, . . . . | $ 1567 | 25 |
| Interest to January 1st, 1870, (Mrs. C.'s death), | 681 | 64 |
| Rents and interest on rents covered by dowers of Mrs. C. and of Mrs. M., up to January 1, 1870, as per statement A, . . . | 4358 | 99 |
| Rents and interest on the 5–540ths claimed as error in the sale of the C. interests, . . | 3487 | 20 |

| | | | | |
|---|---:|---:|---:|---:|
| Amount as of January 1, 1870, . . . | | | $10095 | 08 |
| Cr. by $3000 Confederate currency, scaled at 2½ for one, . . | $1200 | 00 | | |
| By 5-540ths. at $350,000, Confederate currency for the whole King Salt Works estate, scaled at 2½ for one, . . . . . | 1296 | 30 | | |
| Interest to date of Mrs. C'.s death, | 1085 | 76 | | |

| | | |
|---|---:|---:|
| Total credits as of June 1st, 1870, . . | $3582 | 06 |

| | | |
|---|---:|---:|
| Balance due Stuart & Palmer as of that date, | $6513 | 02 |
| Interest to July 26th, 1876, . . . | 2563 | 99 |
| Amount of Mrs. W.'s dower from January 1st, 1870, to her death, July 22d, 1876, . | 1588 | 17 |

| | | |
|---|---:|---:|
| Amount S. & P. as of July 22d, 1876, . | $10,665 | 18" |

They say that no part of the $1567.25 and its interest, has been paid, but that it was the share to be borne by the James King interest, of a certain decree, which had been assigned by Preston's trustee, Gibbony, to them. The depositions of T. L. Preston and of W. A. Stuart, were taken as to the currency in which their transactions were had, and were conflicting. No account of the state of the monetary relations of Heiskell and Preston, or of the latter and Stuart & Palmer, growing out of

these transactions, was taken.   Yet, on the 25th day of February, 1884, the causes came on to be heard together on the papers formerly read, the cross-bill, the exhibits therewith, the answers of Stuart & Palmer, of the company and of Trigg, trustee, the general replications thereto, the former decrees and orders, the decrees of this court, and the arguments of counsel. The demurrers were overruled.   The plea of the statute of limitations was not sustained, because "the recent discovery of the mistake set out in the bill, and in the cross-bill, and the circumstances stated in the latter to avoid the charge of *laches*, were not sufficiently answered."   Heiskell's trustee was decreed to be entitled to the rights of Preston against Stuart & Palmer, for compensation for the deficiency in the price of the Claiborne interests in the King's Salt Works, but only to the extent of those rights, yet paramount to the claims of Massie.   Preston was held to be entitled to set-off Heiskell's trustee's claim against him for compensation for said deficiency, with the amount paid by Preston to discharge encumbrances on the Claiborne, and on the Trigg and Branch interests which had been conveyed to him with *general* warranty, but not those on the James King interest which had been conveyed to him with *special* warranty by Heiskell; and an account of the same was ordered.   Stuart & Palmer were held to be entitled to set-off Preston's claim against them for said deficiency, as to all of those interests, with the amount paid by them to discharge encumbrances thereon, because all of those interests had been conveyed to them by Preston with *general* warranty, and an account thereof was ordered.

    From this decree also an appeal was allowed Massie's administrator, and upon that appeal the case is here now for decision.

    *James H. Gilmore*, for the appellant.

    *White & Buchanan*, for the appellees.

RICHARDSON, J., after stating the case, delivered the opinion of the court.

The complications of this case are more apparent than real, and are caused by the triangularity of the demands set up by the several parties, and by the numerous pleadings in which the same matters are iterated and reiterated. One of the most difficult questions in it, that is, the construction of the deeds of conveyance from Heiskell to Preston, and from Preston to Stuart & Palmer, on the first appeal passed into *res judicata;* as this court decided that those deeds conveyed the entire interests (except the Hunter interest,) of Heiskell in the King's Salt Works estate; that those interests embraced the entire shares of the three Claibornes in said estate; that they were 11-540ths of the whole estate; that when those deeds were made, the parties supposed the Claiborne interests to be only 6-540ths, instead of 11-540ths, and by mutual mistake had computed the value thereof accordingly; that Heiskell was entitled to compensation for the 5-540ths which had been conveyed. but were overlooked in the computation. And we are of the opinion that it is equally clear that the mistake extended and entered into the computation of the purchase money, the sale and the conveyance of Preston to Stuart & Palmer, and that Preston also is entitled to a correction of the mistake and to compensation for the 5-540ths which were overlooked in the computation of the purchase money payable to him by his vendees, Stuart & Palmer. The two deeds were executed within three months of each other. The language describing the interests conveyed, is substantially the same in both,—the Claiborne interests being in both described "as 2-540ths each." Such mistake is averred in the bill, and also in the cross-bill. The averment is not positively denied by the respondents, Stuart & Palmer, but is only argumentatively contested. They contend, that if there was error in the deed to them, "it was a

mere error of the grantor's own in the calculations," and that
such error "is a very different thing from such a mistake as a
court of equity will correct" We are of opinion that this con-
tention is not tenable. It was a mistake of fact, a mutual mis-
take of grantor and of grantee, and whether it was a mistake
as to the factors entering into the calculation, or a mistake as
to the mode of the calculation, or in the process and result
thereof, it matters not. In any event, it was a mutual mistake
of fact, not of law, and such a mistake as it is one of the origi-
nal grounds of equity jurisdiction so to amend as to do justice
to all concerned, and to place them as nearly as practicable in *statu
quo.* Adams' Equity [191]; Pomeroy's Eq. § 188; Story's Eq.
Jur. § 155; *Hoback* v. *Kilgore,* 26 Gratt. 442; *Mauzy* v. *Sellers,*
Id. 641; *Hunt* v. *Rousmaniere's adm'rs,* 8 Wheat. 174. In *Simp-
son* v. *Vaughan,* 2 Atk. 33, Lord Hardwicke said, a "mistake is
a head of equity on which a court always relieves." See also
*Snell* v. *Ins. Co.* 98 U. S. 89.

Then, just as Preston under Heiskell's deed, received more
than he bargained and paid for, so Stuart & Palmer under
Preston's deed, received more than they bargained and paid
for. This court, on the first appeal, decided that Heiskell's
trustee was entitled to compensation for that excess. And on
the same principle, it is a facile and an inevitable conclusion
that, the facts being identical, Preston, or his assignee, is also
entitled to compensation for such excess. In the absence of
proof to the contrary, the presumption is that such compensa-
tion should be in the same proportion that the 6-540ths bar-
gained and paid for, bears to the 5-540ths not bargained and
paid for, but conveyed under the mutual mistake. When that
decision was made, it was undetermined whether or not, upon
a fair settlement of accounts, Heiskell had been paid for the
whole corrected values of the Claiborne interests, as Preston
and Massie contended he had been. Nor has that important
question of fact yet been determined. And it is yet undeter-
mined also, how the balance stands between Preston and Stuart

& Palmer.    But the parties all desire that the principles which underlie this case shall all be settled before they incur the labor and expense of an account, and we proceed to settle the questions which so far have arisen.

Preston and Massie, however, contend that no lien being retained in the deed of July, 1862, the claim of Heiskell's trustee for the additional compensation, is only a personal demand against Preston.    This is a delusion.    The relief is given on the ground of the clearly established mutual mistake in the deeds.    To the extent necessary to complete relief (for equity does nothing by halves), the deeds must be re-formed, so as to vest the title to the said excess of 5-540ths in Heiskell's trustee, should it be ascertained, upon an account taken, that he has never been paid therefor.

This conclusion is, beyond all peradventure, correct, unless Stuart & Palmer are purchasers of that excess for value, without notice.    Such purchasers they certainly are not, unless upon the taking of the proper accounts it shall appear that they have paid the price of said excess.    They have, it is true, a conveyance of the 5-540ths.    But the mutual mistake entered into the deed of Preston to them, as well as into that of Heiskell to Preston, and that circumstance entitled Preston, and all claiming under him, to a re-formation of these deeds, in order to do complete justice.    Such re-formation having been so made, or considered as made, how can they claim to be such purchasers, when they not only have no conveyance for the excess, but are entitled to none, at least until they shall show that they have paid for the entire Claiborne interests?    *Lamar* v. *Hale*, 79 Va., and authorities there cited.

Nor does Massie occupy higher ground than his assignor, Preston.    He took an assignment of Preston's claim against Stuart & Palmer, for value, it is true, but with full notice of the mistake, and of Heiskell's equitable rights, and he must take the burden with the benefit, the maxim being *qui sentit commodum sentire debet et onus.*

The same reasons apply as well to the James King interest in the King's Salt Works estate, as to the Claiborne interests therein. But it is contended, that whilst Heiskell did convey the Claiborne and the Trigg and Branch interests to Preston, with general warranty, and might be liable to Preston for all sums paid by him to disencumber them, he conveyed the James King interest to him with only *special* warranty, and hence would *not* be liable to compensate him for the sums paid by him to disencumber that interest.

After careful consideration we are of opinion that the distinction usually existing between general and special warranty has no application to this case. The relief afforded here is not on the ground of compensation for a breach of warranty, whether general or special. It is the re-formation of an instrument which, being executed under mutual mistake of the parties, as it stood, worked injustice. Heiskell's trustee asked no relief upon the deed and its provisions. He asked relief only on the ground of the mistake. He asks justice. He must do justice. That is a fundamental principle of equity. Heiskell conveyed 11-540 of King's Salt Works estate to Preston, when he supposed he was conveying only 6-540. He came into equity to have the mistake corrected, the deed re-formed, and for compensation for the excess. Preston has paid out money to remove incumbrances on the interests conveyed to him by Heiskell, and asks for reimbursement. To state the case is to demonstrate the obvious conclusion, that the maxim, "He that seeks equity must himself do equity," is justly applicable, and must govern the case in this respect. This principle is not confined to any particular kind of equitable rights and remedies, but pervades the entire field of equitable jurisdiction, so far as it is concerned with the administration of equitable remedies. Pom. Eq. Jur. § 388; *Jones* v. *Roberts*, 6 Call, 187; *Lipscomb's adm'r* v. *Miller's exo'rs*, 1 H. & M. 204.

Stuart & Palmer, and also the Holston Salt and Plaster Company, plead the statute of limitations, not only against the

claim set up by Preston, but also against that of Heiskell's trustee. It is manifest that the statute of limitations has no appropriate application to the case here made for relief on the ground of mistake, which has been established by such clear and strong proof as leaves no room for reasonable doubt. Were this a mere demand for unpaid purchase money for land conveyed without the retention of a lien, of course such plea would apply. But cases of fraud, trust and mistake are not within the statute of limitations. 1 Wash. 145; 4 Munf. 222.

At all events, in cases of mistake, as in cases of fraud, the statute does not begin to run until the discovery of the mistake. 1 Story's Eq. Jur. section 1521 a; *Rowe* v. *Bentley,* 29 Gratt. 760–1; 1 Danl. Chy. Pr. 645; 1 Barton's Chy. Pr. 98; Kerr on F. and M. 436.

The claim here which these respondents sought to meet by this plea. is a claim to resort to the land for the payment of the purchase money, and such a claim, under the circumstances, cannot be affected by any lapse of time short of a period sufficient to raise the presumption of payment. *Hanna* v. *Wilson,* 3 Gratt. 232; *Coles* v. *Withers,* 33 Gratt. 186. No such period has elapsed here; because, to say nothing of the discovery of the mistake as late as 1875, and if it be admitted for the sake of the argument, that the cause of action arose in October, 1862, the period of twenty years had not elapsed when this suit was brought in 1878; and when the war and stay-law period is eliminated, there will remain only a little more than nine years. *Coles* v. *Ballard,* 78 Va. 139.

The existence of the deeds conveying the title and retaining no lien, cannot avail to reduce the period of limitation to five years, because the allegation and proof of the mistake requires the abrogation of those conveyances, at least *quoad* the unpaid purchase money for the excess over the 6-540 mentioned therein. Those conveyances must be so connected as to do complete and effectual justice between the parties; the principle upon which the court acts in making corrections of mistakes, being that

the parties shall be placed in the same situation as they would have been if the mistake had not been committed.    Kerr on F. and M. 20.

The holders of the legal title will be considered in equity as trustees for the security of the payment of this purchase money.

It is also contended that Heiskell's trustee, and Heiskell himself before the trust-deed of 1869, and Preston have been guilty of *laches* in the prosecution of their respective suits, whereby they are debarred from relief in a court of equity.    The answer to this has already been given in another view of the case.    It is, that the original and the cross-bill both alleged that the mistake was discovered for the first time by the plaintiffs in 1875; and that the subsequent delay in bringing the suit for relief on account of the mistake, is satisfactorily explained.    The allegation of recent discovery was not denied in the answers, and was only attempted to be met by arguments.

It is well settled that *laches* cannot be predicated of those who are ignorant of their rights.    *Rowe* v. *Bentley*, 29 Gratt. 763. Such defence is, in equity, only permitted to defeat an acknowledged right on the ground of it affording evidence that the right has been abandoned.    *Nelson* v. *Carrington*, 4 Munf. 332– 343.

In conclusion, we are of opinion that there is no error in the decree complained of, except wherein it holds that the interest of James King in the King's Salt Works estate, having been sold to Preston with *special* warranty only, no allowances should be made to Preston for any sums of money expended by him in discharging incumbrances thereon.    For this error the decree must be reversed, with costs to the appellant, and the cause remanded for further proceedings in the court below, in conformity with the principles of this opinion.

DECREE AFFIRMED in part, and REVERSED in part.