## Staunton.

CRAUFURD'S ADM'R V. SMITH'S EX'OR AND OTHERS.

OCTOBER 3, 1895.—ON REHEARING, OCTOBER, 1, 1896.

1. CHANCERY PRACTICE—*Petition to Rehear, or Bill of Review—Affidavits—After-discovered Evidence—Hearing on Merits.*—Although a trial court may have erred in allowing a petition to rehear to be filed, because not accompanied by the necessary affidavits, yet, if the case has proceeded to a hearing on such petition, and it then appears that the petitioner is entitled to a rehearing and to the relief prayed for, it is error to refuse the rehearing and relief simply because the petition was not properly supported in the first instance. The court should be satisfied before allowing a petition to rehear, or a bill of review to be filed on the ground of after-discovered evidence, that the evidence relied on is new, and could not have been discovered by the use of ordinary diligence prior to the date of the decree complained of; but when the court is so satisfied, and the petition to rehear, or the bill of review, has been filed, these questions are finally determined, and not to be reopened on hearing on the merits.

2. MUTUAL MISTAKE—*Delivery of Property—Conversion—Amount of recovery.*—Where the property of one has been delivered to another under a mutual mistake of fact, and the latter has converted the same to his own use, he is accountable to the owner, upon discovery of the mistake, for the value of the property, with interest thereon from the date of the discovery of the mistake and demand made. And this right of the owner is not affected by the fact that the property would have perished if it had remained in kind, without conversion, in the hands of him to whom it was delivered by mistake.

3. MUTUAL MISTAKE—*Delivery of Property or Payment of Money—Statute of Limitations.*—Where property has been delivered or money paid under a mutual mistake of fact, the statute of limitations does not begin to run until the discovery of the mistake. The rights of the parties to such mistake are not affected by the lapse of time, nor generally by anything done or omitted, so long as the parties, without fault of their own, remain in ignorance of their mistake.

4. NEGLIGENCE—*Ignorance of Facts.*—No one can be guilty of negligence

in not discovering what he did not know to exist, and had no reason
to believe existed.

5. DECREE FOR ACCOUNT OF DEBTS—*Statute of Limitations.*—When a de-
cree is entered to take an account of debts against the estate of a
decedent, the suit becomes a creditor's suit, and the statute of limi-
tations then ceases to run against the creditors of the estate.

6. MUTUAL MISTAKE—*Lapse of Time—Ignorance of Facts.*—No lapse of
time and no delay in bringing a suit, however long, will defeat the
remedy in case of fraud or mutual mistake, provided the injured
party, during such interval, was ignorant of the fraud or mistake,
without fault on his part. The duty to commence proceedings can
only arise upon discovery of the fraud or mistake.

7. MUTUAL MISTAKE—*Payment of Money—Interest.*—Where money has
been paid and received under a mutual mistake of fact, and no fraud
or misconduct can be imputed to the party from whom the money is
sought to be recovered, interest will not be allowed except from the
time when the mistake was discovered and demand made.

Appeal from two decrees of the Circuit Court of Clarke
county, pronounced May 21, 1889, and May 12, 1893, in a
suit in chancery wherein Annie M. Smith and others were
the complainants, and Treadwell Smith's Executor and others
were the defendants, in which suit appellant filed his peti-
tions.

*Reversed.*

The opinion states the case.

*R. G. H. Kean* and *Samuel J. C. Moore,* for the appellant.

*Marshall McCormick* and *A. Moore, Jr.,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

David Craufurd, of Prince George county, Maryland, de-
parted this life, as was believed, intestate, in the latter part of
the year 1860, or the early part of the year 1861, leaving a
large estate, consisting of lands, slaves, and other personal
property. In 1861 his slaves were divided by his adminis-
trator amongst his next of kin, as his distributees. One of

these distributees was the wife of Treadwell Smith, of Clarke
county, Virginia.   He received in right of his wife eight
slaves in the division referred to, valued at $4,750.   After-
wards, he received the following sums from the administra
tor of Craufurd, on account of his wife's interest in the es-
tate, viz., $1,392.19 August 3, 1869, and $136.95 September
16, 1871.

Mr. Smith departed this life in the year 1873, leaving a
will by which he charged his lands with the payment of his
debts.   In 1874 his devisees had his lands partitioned be-
tween them.   In the year 1878 some of his devisees brought
a suit in the Circuit Court of Clarke county to restrain the
sale of the lands assigned to one of the devisees in the par-
tition refered to (which was then advertised for sale for the
payment of that devisee's individual debts), until the indebted-
ness of their testator, Treadwell Smith, deceased, could be as-
certained, and his will construed; and praying that the residue
of his debts, after the application of his personal property
thereto, be held a charge under the will upon his lands, in
the hands of each devisee according to such devisee's inter-
est therein, and for other relief.

On the 6th day of February, 1883, a decree was entered
in the cause directing one of the commissioners of the court
to take an account to ascertain, among other things, the out-
standing indebtedness of said estate.   After the institution
of the suit, and prior to the decree for the account, the will
of David Craufurd, deceased, was found, and admitted to
probate in the proper court in the State of Maryland, on the
16th of August, 1881.

On the 12th day of December following, an authenticated
copy of the will was admitted to probate in the County Court
of Clarke county, and John S. Blackburn qualified in that
court, as administrator of Craufurd, with the will annexed.

Mrs. Smith, the wife of Treadwell Smith, was not one of
the beneficiaries under the will of Craufurd.

On the third day of April, 1893, whilst the taking of the account under the decree above referred to was pending before the commissioner, the administrator of Craufurd, with the will annexed, placed before such commissioner his claim against the estate of Treadwell Smith for the value of the slaves and the moneys which he, Smith, had received from Craufurd's estate, in the right of his wife, who was supposed to be one of the distributees of Craufurd.

For some reasons, not shown by the record, the account was not taken as directed. At the September term, 1887, of the court, Blackburn, the administrator of Craufurd, filed his petition in the case, setting out, among other matters, the death of Craufurd, his supposed intestacy, the distribution of his estate, and the subsequent finding of his will, and charging that Smith's estate was indebted to the estate of Craufurd in the sum of $6,279.14, the amount received by him in money and property from Craufurd's estate; and that it was a charge upon Smith's land which he asked to have subjected to this and his other debts.

The executor, and some of the devisees of Smith demurred to, and answered the petition at the May term, 1888, of the court. By their answers they deny the allegations of the petition, and rely upon the statute of limitations, and laches on the part of the petitioner, as defences.

Afterwards, the account directed in the cause was taken and reported to the court. Exceptions were filed to it by the executor and some of the devisees of Smith. At the May term, 1889, the case was heard, and the court entered a decree in favor of Craufurd's administrator for $1,529.14, the aggregate amount of the money received by Smith from Craufurd's estate in right of his wife, with interest thereon from August 16, 1881, till paid, and directed that the lands of Smith should be subjected therefor.

At the May term, 1890, Craufurd's administrator filed a petition to rehear the decree, on the ground that the court

erred in not allowing interest from the time the money was received, and for not allowing compensation for the slaves.

At the October term, 1891, of the court, the appellant filed his amended and supplemental petition to rehear the same decree, upon the ground that since the rendition of that decree he had discovered new and important testimony, not known or accessible before. The averments of the amended petition made a good case for rehearing the decree complained of. They purported to be made partly upon the personal knowledge of the petitioner, and partly upon information derived from others. The petitioner made oath that the statements contained in it, so far as made upon his knowledge were true, and so far as made upon the information of others, he believed them to be true. After the court had allowed it to be filed, the petitioner, at the May term, 1892, filed the affidavit of his counsel, that the averments of the petition, as to the diligence which had been used in searching for evidence to make out his case, and as to the time when the newly discovered evidence had been found, were true. He also filed with that affidavit, the statements of the newly discovered witnesses of what their evidence would be, which were signed by them, but not sworn to. The appellees asked leave for time within which to file their answers to the petition, which was granted, but no answers were ever filed. The petitioner afterwards took the depositions of the after discovered witnesses and of others, and showed that he was entitled in part, at least, to the relief prayed for; but, the court, upon the hearing of the cause, denied him any relief, and dismissed his petitions for rehearing. This was error unless the court had the right, upon the hearing on the merits, to dismiss the petition, because it had erred in allowing it to be filed in the first instance. This we do not think it had the right to do. Whilst trial courts ought to adhere strictly to the rules governing the filing of petition to rehear, yet if they err in

allowing a petition to be filed upon the ground of after dis-
covered evidence, because the required affidavits do not
accompany it, and the case is proceeded in to a hearing, and
it then appears that the petitioner is entitled to a rehearing
of the decree complained of, and to a modification or reversal
of it, it would be technical indeed to hold that such relief
could not be granted, because the court had erred when it
allowed the petition to rehear to be filed without the affida-
vits which ought to have accompanied it, when the purpose
of filing the affidavits, was not to prove the petitioner's case,
but to satisfy the court of his good faith, diligence in pre-
paring his case for trial, and his ability to produce the
newly discovered evidence, if given an opportunity to do so.

The court, before allowing a petition to rehear, or a bill of
review to be filed on the ground of after discovered evidence,
ought to be satisfied that the evidence relied on is new and
could not, by ordinary diligence, have been discovered prior
to the date of the decree complained of; but when the court
is so satisfied, and allows a petition to rehear, or a bill of
review to be filed, those questions are finally determined,
and are not open when the petition to rehear, or a bill of
review is heard upon the merits.   1 Barton's Ch. Pr. 332.

Upon the rehearing of the case, the proof showed that
Treadwell Smith had sold, in the summer of 1861, seven of
the eight slaves received by him from Craufurd's estate.   It
does not clearly appear at what price he sold them, but it
does appear that these seven slaves were valued in the divi-
sion of the slaves, amongst the distributees of David Crau-
furd, at $3,650, and that about the time of the sale Smith
was asking for one family, consisting of six of the seven
slaves sold, the sum of $3,000.   These six were valued in
the division referred to at $2,850.   From these facts it may
be fairly concluded that he received for the seven slaves
sold at least $3,650, the valuation fixed upon them when he
received them.

. Having received from Craufurd's estate by mutual mistake of fact money and slaves to which he was not entitled, and having sold some of the slaves and converted the proceeds to his own use, his estate upon the discovery of the mistake, became accountable to the estate of Craufurd therefor, both in morals and in law.

The claim of the appellees that their testator's estate ought not to be charged with the proceeds of the slaves sold, because if their testator had not sold them they would have been emancipated during or at the close of the war between the States, is wholly untenable. If Smith had kept the slaves, and they had been emancipated, he would not have been chargeable with their value, but having sold another's property, and converted the proceeds to his own use, it is no answer, when called upon to account therefor, to say that it is true he received $3,650 for the property, but, if he had not sold it, it would have been lost by the results of the war, and therefore the owner is entitled to nothing, and he will retain the money for which the property was sold.

It not appearing that the other slave, who was valued at $1,100, was sold by Smith, his estate ought not to be charged therewith.

The personal estate of David Craufurd, deceased, having been distributed amongst his next of kin as distributees, under a common or mutual mistake as to the rights of the parties, the statute of limitations did not begin to run until the mistake was made known by the discovery of the will. The remedy in a case of mutual mistake, so far as affected by the statute of limitations, seems to be governed by the same principle as in a case of fraud; viz., that the rights of the parties to such mistake are not affected by the lapse of time, or generally speaking by anything done, or omitted to be done, so long as the parties remain, without any fault of their own, in ignorance of the mistake which has been committed. *Rowe* v. *Bently,* 29 Gratt. 763; *Massie's*

*Adm'r* v. *Haskell's Trustee*, 80 Va. 789, 805; 2 Story's Eq. Jur.; section 1521a (13th ed).

There is no pretense in this case that the will might have been discovered earlier, if the parties had made reasonable effort to discover it. So far as the record shows, no one had any intimation that David Craufurd had left a will, and no one can be guilty of negligence in not discovering that which he not only did not know was in existence, but had no reason to believe existed.

Nor is there any ground for presuming that the will was found any length of time before it was admitted to probate. On the contrary, the devisees under the will would have been anxious to have it admitted to probate as soon as possible, after it was found, in order that they might get the benefit of its provisions, of which they had been so long deprived by reason of its loss.

The statute of limitations did not, therefore, begin to run against the claim asserted by Craufurd's administrator until in the year 1881, when the will was found. Prior to that time, this suit was instituted. · One of its objects was to ascertain the indebtedness of the estate of Treadwell Smith, deceased, and this was one of its special prayers of relief. By the decree entered in the cause at the February term, 1883, of the court, one of its commissioners was directed to take an account, and to ascertain and report, amongst other things, such indebtedness. The suit then became, if it was not when brought, a creditor's suit, and the statute of limitations then ceased to run against the creditors of Smith's estate. *Stephenson* v. *Tavener*, 9 Gratt. 398, 405; *Ewing's Adm'r* v. *Ferguson's Adm'r, &c.*, 33 Gratt. 548, 558–9; *Harvey's Adm'r* v. *Steptoe, &c.*, 17 Gratt. 289. The claims of the appellant were not barred by the statute of limitations, since it had only been running against them from August 16, 1881, when the will was probated, until February 6, 1883, when the decree to convene the creditors of Treadwell Smith, deceased,

was entered. Neither has there been such laches in the prosecution of the appellant's claim as should deprive him of the right to recover. No lapse of time, no delay in bringing the suit, however long, will defeat the remedy in cases of fraud or mutual mistake, provided the injured party, during all this interval, was ignorant of the fraud or mistake without fault on his part. The duty to 'commence proceedings to assert his rights can only arise upon the discovery of the fraud or mistake; and the possible effect of his laches will begin to operate only from that time. 2 Pom. Eq. Jur., sec. 917 and note 2 (2d ed.); *Rowe* v. *Bently*, 29 Gratt. 762–3, *Massie's Adm'r* v. *Haskell's Trustee*, 80 Va. 789, 790, 805; 1 Dan. Chy. Pr., 645 (4th ed.); Kerr on Fraud and Mistake, 435–6.

The next and last question to be considered is from what time the sum due the appellant ought to bear interest. Generally, he who has the use of another's money must pay interest upon it from the time he receives it until he repays it, unless there be an agreement, express or implied, to the contrary.

But a different rule prevails, and ought to prevail, we think, where the money is received under a mutual mistake. The rule in such cases is that, where money has been paid and received by a common or mutual mistake, and no fraud or misconduct can be imputed to the party from whom the money is sought to be recovered, interest will not be allowed except from the time when the mistake was discovered and demand made. In such case the question of interest depends upon the fault of the debtor. *Askhurst* v. *Field's Adm'r.*, 38 N. J. Eq. 315; *Simons* v. *Walter*, 1 McCord's Rep. 97; 11 Amer. & Eng. Enc. of Law, 398; 2 Chitty on Cont., 950–2, note X; 5 Lawson's Rights and Rem., sec. 2438; *Northup's Ex'or* v. *Graves*, 50 Amer. Dec. 264.

Until Treadwell Smith knew that the will had been found and that his wife was not one of the beneficiaries under it,

he was under no obligation to restore what he had received, and there was no one to whom he could restore it. Until then he was not at fault. So far as the record shows, no demand was made by the appellant upon the estate of Tread-well Smith for the payment of the claim in controversy until April 3, 1883, when he placed it before the commissioner taking the account of the indebtedness of Smith's estate. From that time the claim should bear interest.

We are of opinion that the decree of the May term, 1893, dismissing appellant's amended petition to rehear the decree of the May term, 1889, is erroneous, and must be reversed, and that so much of the decree of the May term, 1889, as fixes the amount of the appellant's claim at $1,392.19 and $136.95, with interest on each sum from August 16, 1881, is erroneous, and must be so amended that the appellant shall recover against the representatives of the estate of Treadwell Smith, in lieu thereof, the sum of $5,179.14, with interest thereon from April 3, 1883, until paid, being the aggregate amount of the proceeds of the seven slaves sold and the money received by Treadwell Smith from the estate of David Craufurd; that in all other respects the said decree of the May term, 1889, must be affirmed, and the cause remanded to the Circuit Court for further proceedings.

ON REHEARING OCTOBER 1, 1896.

HARRISON, J., delivered the opinion of the court.

This case is before us on a petition for a rehearing of the decree of this court entered on the 3d day of October, 1895, in so far as it holds the estate of Treadwell Smith, deceased, liable for the value of the slave, Sandy Shorter. We have carefully reviewed and reconsidered the evidence upon which this liability rests, and have been unable to come to a different conclusion from that heretofore reached. The court therefore adheres to the opinion formerly delivered.

KEITH, P., dissenting, said:

I concur in the conclusion announced in this case, except that I am of opinion that the decree appealed from should be reduced by crediting thereon the sum for which it is alleged the former slave, Sandy Shorter, was sold.

*Reversed.*