FEDERAL DEPOSIT INSURANCE CORPORATION, APPELLANT, v. THE FARMERS BANK OF NEWTON, RESPONDENT.—180 S. W. (2d) 532.

Kansas City Court of Appeals. May 8, 1944.

*Fred Bellemere, Roy W. Rucker, Francis C. Brown* and *James M. Kane* for appellant.

*John S. Cavanaugh* and *John H. Russell* of counsel.

352

*Rex H. Moore, Wilfred Wimmell* and *W. Raleigh Gough* for respondents and cross-appellants.

BLAND, J.—This is a suit by the Federal Deposit Insurance Corporation, against the Farmers Bank of Newton, in liquidation, a corporation organized under the laws of this State, and the agent of the stockholders of the bank, for interest upon its claim as subrogee of depositors of the bank, for the amount it paid them pursuant to its insurance obligation under title 12 U. S. C., sec. 264.

The case was tried by the court without the aid of a jury, resulting in a judgment for plaintiff in the amount of $567.85, being for interest beginning with the time of the filing of its claim with the Commissioner of Finance, but denying interest to that date from the date the bank closed. Plaintiff has appealed, and defendant has prosecuted a cross-appeal because of the allowance to plaintiff of any interest whatsoever.

The facts show that on February 2, 1939, the bank was closed, and its affairs were taken over by the Finance Commissioner. Prior to June 14, 1939, plaintiff paid all of the insured depositors the amounts of their insured deposits, without interest, and obtained from each depositor an assignment of his claim based upon his deposit. These assignments, among other things, provided:

"For the purpose of subrogating the Federal Deposit Insurance Corporation to all of the claimant's rights against said closed insured bank arising out of the INSURED DEPOSIT in the amount shown above, to the extent of the amount paid the receipt thereof is hereby acknowledged, claimant hereby assigns, transfers and sets over unto said Corporation all claims against said closed insured bank and its stockholders arising out of said insured deposit, together with all evidences of such indebtedness held by claimant".

On February 17, 1939, the Commissioner gave notice to all creditors of the bank to file their claims on or before June 17, 1939.

On or about June 14, 1939, plaintiff filed a claim with the Commissioner for $12,449.11, which it had paid to the depositors claiming preference or priority therefor and a general claim for $70,190.24 paid to depositors, and these claims were approved by the Commissioner in the total amount of $82,639.35 on June 17, 1939. Thereafter, plaintiff filed an additional claim for eighty cents and this was approved by the Commissioner on June 30, 1939. In none of these claims was any interest asked.

In July, 1939, the Commissioner filed in the court below a petition for an order approving his action in approving and classifying claims, which set out the claims of plaintiff and their amounts. This petition stated that the part of plaintiff's claim based upon "preferred" claims should be given priority, in the amount of $12,449.11. The petition

also listed other claims in the amount of $331.05, which had been rejected by the Commissioner.

On July 18, 1939, the court made an order upon said petition, classifying plaintiff's claim upon "preferred" deposits in the amount of $12,449.11 as a preferred and prior claim, and approving the acts of the Commissioner in approving all general claims as set out in the petition, totalling $70,532.45.

On the same day the court made an order finding that the Commissioner had in his hands as of June 30, 1930, $74,432.61 in cash and $12,500 in United States Government Bonds, totalling $86,932.61; that the total of all outstanding claims was $83,148.04, and that the amount in the Commissioner's hands, in cash, was sufficient to pay all claims in full, all administration expenses and all "contingent liability" upon claims which had been filed but rejected.

It was ordered that the Commissioner sell and convert into cash such Government Bonds as would pay a "dividend of one hundred per cent on all preferred and common claims now allowed against said bank" within the earliest practical time.

On July 25, 1939, the Commissioner mailed plaintiff a check for $82,640.15, which was the amount of the principal of plaintiff's claim, which check was indorsed and cashed by the plaintiff. Plaintiff never filed any objection to the allowance of its claims in the principal amount of $82,640.15 only, and did not appeal from said last mentioned order.

On August 4, 1939, plaintiff filed with the Commissioner an additional claim for $2382.79, representing interest at the rate of six per cent per annum (the legal rate in this State) from February 2, 1939 to July 25, 1939, on the amounts paid the depositors by plaintiff. This claim was rejected by the Commissioner on September 9, 1939.

On August 19, 1939, the court made an order reciting and approving the sale of the Government Bonds and the payment in full of all claims which had been approved. The order recited that the "purported" claim by plaintiff for interest, filed with the Commissioner, had not been approved by him; that the total "contingent" liability of the bank, including such claims as plaintiff's, was $2880.32; that all expenses of liquidation had been paid; that the Commissioner had on hand certain assets of the bank, undisposed of, which were more than sufficient to pay all "contingent" liability "if and in the event it is hereafter determined that said claims should be paid".

The order then directed the Commissioner to call a meeting of the stockholders of the bank to elect, if they saw fit, an agent to continue the liquidation of the undisposed assets of the bank, and to report the results of such meeting to the court.

Thereafter, such a meeting of the stockholders was held and defendant, J. L. Tucker, was elected agent of the stockholders for such purpose. Thereafter, the Commissioner and the bank filed a petition

praying the approval of such action and directing the Commissioner to turn over to such agent the remaining assets consisting of $4887.17 in cash, and real estate, notes, securities, and other personal property of the value of $20,363.16, as shown by the books of the bank prior to its closing, upon the execution of a bond by the agent in the sum of $10,000, conditioned upon such agent keeping on hand an amount sufficient to exceed by twenty-five per cent the amount of all "contingent" liability of the bank.

On September 25, 1939, an order was made by the court approving the selection of the agent and directing the agent to furnish such bond and to keep on hand twenty-five per cent more than the total of such "contingent" liabilities until "such contingent liability is determined or barred by the Statutes of Limitations." The court further ordered the Commissioner to turn over to the agent such remaining assets upon the furnishing of such bond. Thereafter such bond was filed and approved by the court, and the Commissioner filed a petition for his final discharge. Said petition was granted on September 25, 1939.

This suit was filed on June 23, 1942.

It is insisted by the plaintiff that the court erred in failing to render judgment in favor of it for interest on the claims of the depositors of the bank, which it took over, to be computed beginning with February 2, 1939 instead of on the day that plaintiff's claim was filed with the Commissioner. We think this contention must be sustained.

Defendants do not admit that plaintiff is entitled to any interest on the deposits, but there is no question but that plaintiff is entitled to recover such interest, in view of the fact that the bank had surplus assets, and that it should be calculated from the date the affairs of the bank went into the hands of the Commissioner of Finance. [Greva v. Rainey (Calif.), 41 Pac. (2d) 328; Lippitt v. Thames Loan & Trust Co. (Conn.), 90 Atl. 369; Lamar v. Taylor (Ga.), 80 S. E. 1085, 1092; Flynn v. Am. Bk. & Tr. Co. (Me.), 69 Atl. 771; Reichert v. Met. Tr. Co. (Mich.), 291 N. W. 228; People v. Merchants Trust Co. (N. Y.), 79 N. E. 1004; Hackney v. Hood (N. C.), 166 S. E. 323; Jones v. Skinner (Ore.), 80 Pac. (2d) 60; Ex parte Stockman (S. C.), 48 S. E. 736; State ex rel. McConnell v. Park Bank & Trust Co. (Tenn.), 268 S. W. 638; Hoffman v. Unger (W. Va.), 24 S. E. (2d) 911; 7 C. J., pp. 884, 885; 9 C. J. S., p. 1013; 7 Am. Juris., p. 287; The National Bank of the Commonwealth v. The Mechanics National Bank (N. Y.), 94 U. S. 437; Richmond v. Iroms (Ill.), 121 U. S. 27; Ticonic National Bank v. Sprague, 303 U. S. 406; Stein v. Delano, 121 Fed. (2d) 975; Bates v. Farmers Savs. Bank of Ankeny (Ia.), 3 N. W. (2d) 517; Fed. Dep. Ins. Corp. v. Aconto (Wisc.), 6 N. W. (2d) 353; Fed. Dep. Ins. Corp. v. Leggett (Ark.), 164 S. W. (2d) 882.]

However, defendants contend that in filing its claim without demanding interest, by suffering judgment and allowing the order to

become final, by accepting payment of the principal, and by not appealing from the order of the court discharging the Finance Commissioner, plaintiff lost any right to sue for the interest.

If interest is not due, by the terms of a contract, as here, the payment of the principal is a bar to the recovery of interest, for the reason that interest is merely incidental to the debt and cannot exist without it. The debt being extinguished, the interest must necessarily be extinguished also. [9 C. J. S., p. 1010; 34 C. J., pp. 752, 753, 762, 818, 822; 1 C. J. S., pp. 1306, 1307, 1308, 1323.] It is also the rule that, even if plaintiff is entitled to interest, he cannot recover it where he has failed to include it in his demand. [Reuter v. Nelson, 9 S. W. (2d) 655, 660; Hannan-Hickey Bros. Constr. Co. v. C. B. & Q. R. R. Co., 226 S. W. 881, 882.]

However, in this case plaintiff was not entitled to receive interest on the deposits in question unless there was a surplus available for such purposes (see cases first cited, *supra*), and it had not become evident that there was any such surplus at the time plaintiff filed its claim. But regardless of this, the rules, as we have stated them, have no application in insolvency proceedings. Since a creditor has no legal right, at any time, in the course of administration, to demand either principal or interest, *and institute suit if payment is refused*, no object could be accomplished by a formal demand for the claim with interest. Therefore, no question of waiver or relinquishment of the claim to interest could be involved merely because no formal demand was made. [Jones v. Skinner, *supra*; Flynn v. Am. Bank & Trust Co., *supra*; Stein v. Delano, *supra*; State ex rel. McConnell v. Park Bank & Trust Co., *supra*.]

In the case last cited the court said, l. c. 640: "But this rule has no application, under authorities, and upon principle, in an insolvency proceeding. The sustaining of the bill operates as an injunction against suits by creditors. The act provides the method for paying dividends on claims until they are liquidated, or until the assets of the insolvent are exhausted. The creditor in the due course of administration, has no legal right at any particular time to demand either principal or interest, and institute suit if payment is refused. He is only entitled to receive dividends as they are declared by the receiver. The question of waiver or relinquishment is not involved. The law never requires useless formalities. No object could be accomplished in an insolvency proceeding by a creditor formally demanding the amount of his deposit with interest. If his demand were refused, as it would be, he has no recourse, and could not sue for either the principal or the interest."

In Flynn v. American Banking & Trust Co., *supra*, l. c. 775, the court said: "The defendants claim, however, that an action cannot be maintained for interest alone, and hence this proceeding cannot be maintained for interest. It is true that one action cannot be main-

tained for the principal of a debt and a separate action for the interest. It is also true that, when a creditor has accepted payment of the principal in full for his claim or debt, he cannot afterward maintain an action for the interest. The interest is incident to the principal debt, and not a separate debt, unless so stipulated in the contract. In this case, however, there has been no action to recover the principal, and there has been no acceptance, nor even offer of payment, of the principal in full for the debt. The proceedings against the corporation were for the sequestration and division of its assets. The sums received by the creditors from those assets were received as dividends, not as payments. They were, of course, applicable to the debts as they were received; but their reception and application entailed upon the creditors no forfeiture of the accruing and accumulating interest.''

It was not necessary that plaintiff appeal from the order discharging the Finance Commissioner in order to prosecute this action. No authority is cited by defendants which supports this contention. No question of *res adjudicata* is involved. The Commissioner, primarily, was representing the creditors at the time the proceedings before him were pending and the interests of the creditors were adverse. This is not true in this proceeding, as this is one involving the liability of *creditors*, on the one hand, and the agent of the *stockholders* of the bank on the other. As between the rights of the creditors and the stockholders the former are paramount. [Craig v. Stacey, 50 S. W. (2d) 104, 106; Dennis v. Grand River Drain. Dist., etc., 74 S. W. (2d) 58, 60.] ''It has been shown heretofore, from the aspect of the disposition and ownership of the corporate property and assets, that upon the dissolution of a corporation, its assets constitute a fund for the payment of its creditors and stockholders and that in the absence of statute, it is usually considered that the stockholders assume title to such property and assets subject to the payment of the corporate debts. It is accordingly true that in distributing the assets of a dissolved corporation, the debts and liabilities of the corporation are to be satisfied before any distribution to stockholders is made''. [13 Am. Juris., pp. 1211, 1212.]

The Commissioner did all he could to preserve the rights of the creditors in and to the surplus assets, which were turned over to the stockholders' agent. The Commissioner presented a petition to the court asking authority to call a meeting of the stockholders pursuant to section 7933, Revised Statutes Missouri, 1939, reciting therein that the Commissioner had received a purported claim for interest in the sum of $2382.79 from the plaintiff on August 4, 1939; that the total contingent liability for the bank, including the purported claim of plaintiff for interest, was $2880.32; that all expenses had been paid; and that the cash available was more than sufficient to pay all such contingent liability. Defendant, Tucker, was elected as the agent of the stockholders and the assets of the bank were turned over to him

and Tucker, as agent of the stockholders, received $4887.18 in cash, and other assets having a book value of $20,363.16. The court ordered that the agent keep on deposit a sum equal to twenty-five per cent more than the contingent liabilities of the bank, and to retain said fund until said contingent liability is determined or barred by the Statutes of Limitation. The agent has that sum on hand.

Section 7935 provides, among other things: "Whenever the commissioner shall have paid to each creditor of any stock corporation, whose claim has been duly proved the full amount of such claim, and shall have made proper division for claims in litigation and not finally determined, and shall have paid all the expenses of liquidation, he shall call a meeting of the stockholders" who "shall determine whether the commissioner shall continue as liquidator to wind up the affairs of such corporation, or whether the stockholders themselves shall elect an agent or agents for that purpose". The Commissioner or the agent, as the case may be, "shall continue the liquidation of the affairs of such corporation and after paying the expenses thereof, shall distribute the proceeds among the stockholders", and the corporation shall be dissolved.

It is difficult to see that, in turning over by the Commissioner of the remaining assets of the bank to the stockholders' agent, plaintiff's right to receive interest on its claim was extinguished, under all of the circumstances. The interest had not been paid. Plaintiff was still entitled to it and the stockholders cannot claim a paramount right in the fund. Undoubtedly, plaintiff could have sued the stockholders if all of the remaining assets of the bank had been turned over to them by the Commissioner, and it seems apparent that it can sue their agent who is in possession of such assets. The law does not require useless formalities. It was not necessary, in order for plaintiff to sue, to wait until the assets were turned over to the stockholders and then sue them.

However, it is contended that plaintiff's claim for interest was barred by the Statutes of Limitations. [Secs. 7928, 7932, R. S. Mo. 1939.]

Section 7928 provided that notice be published by the Commissioner of Finance fixing the time (four months) in which claims against the failing bank may be filed with such Commissioner.

Section 7930 provides for the rejection or the approval of any claim filed with the Commissioner and outlines the procedure in the circuit court to be taken if the Commissioner fails to reject any claim objected to by any party interested.

Section 7931 relates to the duty of the Commissioner in respect to approving or rejecting claims and the procedure in respect thereto.

Section 7932 provides for the rights of claimants whose claims have been approved by the Commissioner to share ratably with general creditors, fixing the time (six months) within which claimants, whose

claims have not been approved by the Commissioner, may institute action thereon, and provides a bar to suits against the bank unless brought within the period of limitation prescribed, "while the commissioner is in possession of its affairs and business". Said section also provides for the filing of actions or proceedings while the Commissioner is in charge of claims not approved by him.

Section 7934 provides for the payment of dividends.

The Commissioner, in his notice, specified June 17, 1939, as the last day for filing claims. Plaintiff's claim for interest was not filed within that time, and it was not received by the Commissioner until September 8, 1939, when it was rejected by him, the Commissioner stating: "The above claim cannot be accepted or filed and is hereby rejected this 8th day of September, 1939".

It is claimed that, by reason of Section 7932, plaintiff could not have had more than six months to file a suit for interest, whereas, this suit was filed on June 23, 1942, almost three years after its claim for interest had been rejected by the Commissioner. The right to interest was an inherent incident to the claim allowed to the plaintiff and it was wholly unnecessary that a specific claim or demand for interest be made. As above stated, this is a proceeding where the plaintiff and the stockholders are, in effect, adverse parties, and the provisions of the statute, which defendant rely upon, involve, primarily, the right of the creditors among themselves. At the time this suit was filed the Commissioner was not in possession of the affairs and business of the bank. The assets of the bank were, and had been, in the possession of the stockholders' agent for a long time. Sections 7928 and 7932, fixing the period for the filing of claims and the institution of suits on claims rejected by the Commissioner should be construed in the light of their obvious purpose, that is, to permit the Commissioner to liquidate the assets of a suspended bank and ratably distribute the available funds to all of the creditors as speedily as possible. The right of a creditor of a closed bank to participate, with all of the other creditors, in the ratable distribution of the assets held by the Commissioner is conditioned upon the compliance with these special statutory provisions except for which it would be necessary for the Commissioner to await the running of the general Statutes of Limitation before proceeding to a final distribution of the assets among the creditors who are the real owners thereof. The provisions of these sections of the statutes provide a procedure applicable as between the creditors during the period the assets of the suspended bank are *in custodia legis* and are being liquidated for the benefit of the creditors. It is not the purpose of these statutes to extinguish the rights that the depositors possess as against the bank and its stockholders.

"While the rule in this State is that Statutes of Limitation are looked upon with favor, unless clearly unreasonable (Faris v. Moore,

256 Mo. 123, loc. cit. 132, 165 S. W. 311), yet it is also a well-known rule that a Statute of Limitations should not be applied to cases not clearly within its provisions and its application should not be extended by construction". [Macon County v. Farmers' Trust Co. of Macon et al., 29 S. W. (2d) 1096, 1098.]

However, it is claimed that the plaintiff paid the depositors no interest and it is not entitled to recover interest "unless plaintiff was entitled to interest after payment of the claim and until plaintiff was paid in full". The Federal Statute in question, 264 (1)-(7), extends the right of subrogation to the plaintiff after payment of an insured claim "to the extent of such payment". The words quoted also appear in the assignments of the claims of the depositors to plaintiff.

Section 7949, Revised Statutes Missouri, 1939, provides that the Federal Deposit Insurance Corporation upon paying depositors shall "be subrogated to all the rights against a closed bank of the owners of insured deposits therein and shall be entitled to receive such dividends from the proceeds of the assets of such closed bank as would have been payable to such depositor, until such dividends shall equal the insured deposit liability to such depositor".

The meaning of these quoted provisions is to be interpreted "as to the portion of the deposit paid" (Fed. Dep. Ins. Corp. v. Citizens State Bank of Niangua et al., 130 Fed. (2d) 102, 103), and are not to be given the meaning that defendants insist upon. [See, also, Fed. Dep. Ins. Corp. v. Oconto Co. St. Bk. (Wisc.), 6 N. W. (2d) 353; Fed. Dep. Ins. Corp. v. Oconto Co. St. Bk. (Wisc.), 7 N. W. (2d) 602; Bates v. Farmers Savs. Bank of Ankeny, *supra*.]

The judgment is reversed and the cause remanded with directions to the lower court to enter judgment in favor of plaintiff for interest, at the legal rate, upon the sum of $82,640.15, beginning with February 2, 1939, the date of the suspension of the bank, to July 25, 1939. *Cave, J.*, concurs.