D. HOLMES MORTON, *In His Own Right, etc.*

*v.*

GODFREY L. CABOT, INC.

(No. 10119)

Submitted April 20, 1949. Decided June 14, 1949.

HAYMOND, RILEY, JUDGES, dissent.

*Dayton, Campbell & Love,* for plaintiff in error.

*Lively & Lively, A. D. Duduit* and *M. O. Litz,* for defendant in error.

LOVINS, JUDGE:

D. Holmes Morton, individually and as trustee, commenced this action against Godfrey L. Cabot, Inc., a corporation, in the Circuit Court of Kanawha County, seeking to recover the aggregate amount of $6,869.97, consisting of $5,600.65 principal and $1,269.32 interest.

During the pendency of the action, defendant paid plaintiff the principal amount of $5,600.65, and paid into court the sum of $243.97, as interest accruing thereon after June 26, 1945.

The facts were stipulated, a jury waived, and the cause was submitted to the court in lieu of a jury. The trial

court found for defendant, adjudged that plaintiff was not entitled to recover interest, and ordered that the sum of $243.97, representing interest theretofore paid into court, be repaid to defendant. Plaintiff prosecutes this writ of error to that judgment.

By lease dated April 1, 1936, plaintiff and his wife leased certain tracts of land in Kanawha County, aggregating 2411.28 acres, more or less, to defendant for the purposes of producing oil and gas. Some of the lands were owned by plaintiff in his own right and other tracts were held by him as trustee. The pertinent provisions of the lease are substantially as follows: Defendant agreed to pay an annual rental at the rate of one dollar an acre, subject to credit for sums paid as royalties; that it would deliver to plaintiff one-eighth part of all oil produced and saved from the leased premises; that it would pay "* * * a royalty of one-eighth of the then current wholesale market value at the well for all gas produced and saved from the leased premises * * *"; and that it would pay plaintiff "* * * one-eighth part of the net proceeds of the sale of any gasoline extracted or manufactured by the lessee". The rentals and royalties were paid "between the 20th and 30th days of each month, covering gas produced during the preceding calendar month." The lease did not provide for the payment of interest on past due monthly installments.

Several wells were drilled on the lands covered by the lease, from which gas has been produced in paying quantities and the lease is now in full force and effect. Rentals and royalties accruing under the lease were paid by defendant until June 9, 1939, in accordance with its provisions.

Chapter 127, Acts of the Legislature of West Virginia, 1939, was enacted March 11, and became effective on June 9 of that year. From the effective date of said Act, until June 26, 1945, defendant deducted from the monthly installments due under said lease various amounts equalling one-eighth of the privilege taxes paid by defendant

58

on the gross value of the gas produced from the leased premises.

Prior to the effective date of said Chapter 127, an annual tax was levied on the privilege of engaging in the business of producing oil and gas and the business of collecting rents for the use of real and personal property. By Section 2 of Chapter 86, Acts of the Legislature, 1935, an annual privilege tax was levied against persons engaged in the business of producing oil and gas, the amount of the tax on such privilege being "* * * determined by the application of rates against values or gross income as set forth in section 2-a * * *", of Chapter 86, id. Section 2-a of Chapter 86 provided that the tax on the privilege should be at the rate of six per cent on the gross proceeds derived from the sale of natural gas in excess of five thousand dollars, whether such gas was sold and delivered within or without the State of West Virginia. Section 2-i of said Chapter 86, levied a tax of one per cent on the gross income of any person engaged in the business of collecting income from the use of real or personal property, or any interest therein, whether by lease, conveyance or otherwise, "* * * whether the return be in the form of rentals, royalties, fees, interest or otherwise * * *." Section 3-a of Chapter 120, Acts of the Legislature, 1939, provides for a surtax to be levied in addition to the taxes levied by Section 2-a of said Chapter 86.

By Chapter 127, Acts of the Legislature, 1939, a producer of oil and gas was required to pay a privilege tax on the value of the entire production, without any deduction for any payment in money or kind required by any contract or agreement. Such producer was authorized and empowered "* * * to deduct from any payment, in money or in kind, to the owners of any royalty interest, excess royalty or working interest in such properties, that proportion of the tax paid which the said royalty, excess royalty or working interest bears to the entire production * * *." It was further provided by said Chapter 127 that "* * * there is hereby levied upon such royalty interest, excess royalty or working interest, such propor-

tionate part of the tax imposed by said section two-a". Said Chapter 127 also provided that a person paying the tax levied by that chapter should be released from liability for taxes under Section 2-i of Chapter 86, Acts of the Legislature, 1935.

Acting under the provisions of Chapter 127 aforesaid, defendant at various times deducted an aggregate sum of $5,600.65 from payment of rents and royalties due plaintiff under said lease, such deductions being calculated in accordance with the provisions of Chapter 127 aforesaid. Such deductions were made without objection by plaintiff from the effective date of the statute to June 26, 1945, when said Chapter 127 was adjudged to be an unconstitutional statute in the case of *Cole* v. *Oil & Gas Co.*, 127 W. Va. 762, 35 S. E. 2d 25. This Court denied a rehearing in the *Cole* case on September 10, 1945, and on November 5, 1945, *certiorari* was denied by the Supreme Court of the United States. 326 U. S. 765, 66 S. Ct. 147, 90 L. Ed. 461.

There is no dispute as to the amount of the principal so deducted by defendant, nor is there any dispute as to the amount of interest which would accrue from the respective due dates until the principal amount was paid.

Plaintiff contends that the principal was not paid when due, and that after the due dates interest accrued and became payable by operation of law so long as the principal remained unpaid. Defendant denies liability for interest on the principal amount on the equitable ground that it acted in good faith in withholding payments to plaintiff in accordance with the provisions of an apparently valid statute. Defendant further contends that Chapter 127, aforesaid, was an effective and valid legislative enactment until it was declared unconstitutional by a court of competent jurisdiction. In connection with this latter contention, defendant paid into court the said sum of $243.97, representing interest from the date this Court declared Chapter 127, *idem,* to be invalid.

The questions presented by this record are: (1) Is de-

fendant relieved from the payment of interest by acting in good faith; and (2) is the enactment of an apparently valid statute, afterwards declared to be unconstitutional, sufficient reason to preclude the right of recovery of interest on a past due debt?

In this jurisdiction "one who withholds money from the rightful owner on the date when it should be paid is liable for interest." *Mairs* v. *Trust Co.*, 127 W. Va. 795, 803, 34 S. E. 2d 742. See Code, 56-6-27. No liability for interest arises by implication prior to the date a debt is due. See *Lockard* v. *Salem*, 130 W. Va. 287, 43 S. E. 2d 239; *Lutz* v. *Williams et al.*, 84 W. Va. 216, 99 S. E. 440; *Bennett* v. *Coal and Coke Co.*, 70 W. Va. 456, 74 S. E. 418; *Shank* v. *Groff et al.*, 45 W. Va. 543, 32 S. E. 248. Interest accrues on a debt from the time it is due, although liability therefor was in dispute. *Great Northern Ry. Co.* v. *Erie R. Co.*, 58 F. 2d 414.

Although not argued or raised in briefs, the question has been posed by a judge of this Court whether plaintiff, having accepted payment of the principal, may maintain this action for recovery of interest alone. Under the rule laid down in the fourth point of the syllabus of *Bennett* v. *Coal and Coke Co.*, *supra*, where the right to interest arises by implication, such interest is considered to be damages, and may be recovered only along with the principal sum "* * * as an incident thereto, and if the principal sum be accepted in settlement the right to damages is lost and no *separate subsequent* action can be maintained therefor." (Italics supplied). The instant case is not within the rule laid down in the *Bennett* case for the reason that this action was brought to recover principal and interest, both being then unpaid. No separate action has been brought. True, the principal was paid after this suit was commenced, but the facts at the time the action was brought control.

The action of defendant in withholding the interest did not arise from a mistake of fact, but rather a mistake of law. Generally, money paid under a mistake of law cannot be recovered. In the instant case the money was not paid, but was withheld. We do not think that any element

of good faith, lack of fraud, or mistake on the part of the defendant has any bearing on the right of plaintiff to recover interest.

Defendant contends that Chapter 127, Acts of the Legislature, 1939, being a regularly enacted statute, exonerates it from payment of interest; plaintiff maintains that no such effect should be given to that Act. These contentions probably arise out of lines of conflicting authorities on that principle. One line of authorities holds that an unconstitutional statute, otherwise regularly enacted, has the force of law until declared to be unconstitutional by a court of competent jurisdiction. *State* v. *Carroll* (Conn.), 9 Am. Rep. 409, is the leading case expounding that doctrine. An examination of the opinion in the *Carroll* case discloses that the Court was there concerned principally with the power of a *de facto* judge and did not pass on the constitutionality of the statute there considered. The doctrine is further developed and discussed in the case of *Lang* v. *Mayor, etc., of the City of Bayonne* (N. J.), 68 A. 90. In the case of *Texas Co.* v. *State* (Ariz.), 254 P. 1060, the Court followed the *Carroll* and *Lang* cases, and refused to compel payment of gasoline taxes unpaid because of an unconstitutional veto by the governor. In *Board of Highway Com'rs.* v. *City of Bloomington* (Ill.), 97 N. E. 280, recovery of interest on money paid to the city under the provisions of an unconstitutional statute was denied; but recovery of the principal was upheld.

The other line of authorities is to the effect that an unconstitutional statute has no force and effect. That rule is laid down in *Norton* v. *Shelby County,* 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178, in the following vigorous language: "An unconstitutional Act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." See *Huntington* v. *Worthen,* 120 U. S. 97, 7 S. Ct. 469, 30 L. Ed. 588.

The doctrine of the *Norton* case was qualified in the case of *Chicot County Dist.* v. *Bank,* 308 U. S. 371, 374, 60 S. Ct.

317, 84 L. Ed. 329, wherein it was stated: "The Courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. * * * It is quite clear, however, that such broad statements as to the effect of the determination of unconstitutionality must ·be taken with qualifications. The actual existence of the statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, — with respect to particular relations, individual and corporate, and particular conduct, private and official."

This Court has adhered to the rule as originally announced in *Norton* v. *Shelby County, supra.* In *Payne* v. *Staunton,* 55 W. Va. 202, 207, 46 S. E. 927, the rule was quoted with approval. Likewise the rule is approved in the cases of *Campbell* v. *Bryant* (Va.), 52 S. E. 638, and *Ellinger* v. *Commonwealth* (Va.), 45 S. E. 807. Bearing indirectly on the rule considered, this Court held that a written contract, the sole purpose of which was to comply with the provisions of Chapter 127, Acts of the Legislature, 1939, is not binding. *Jones* v. *Columbian Carbon Co.,* 132 W. Va. 219, 51 S. E. 2d 790. However, in the case of *Wall Plaster Co.* v. *Nuzum,* 85 W. Va. 667, 671, 102 S. E. 494, this Court, by way of *obiter,* expressed doubt that the rule was without exceptions.

Without reviewing other cases decided in Federal and state jurisdictions, and conceding that the rule laid down in *Norton* v. *Shelby County, supra,* has been modified by the case of *Chicot County Dist.* v. *Bank, supra,* we see no reason for applying the modified rule to the instant case. No vested rights are at stake. It is simply an instance of a private corporation dealing with an individual, in which the corporation elected to rely upon a statute, subsequently declared to be unconstitutional, in withholding

money justly due the individual. We do not think that the enactment of Chapter 127, Acts of the Legislature, 1939, was sufficient to exonerate the defendant from payment of lawful interest.

Some of the cases examined deal with official acts done in compliance with the provisions of an unconstitutional statute. In this jurisdiction an officer lawfully exercising or discharging his official duty "under any act of the legislature, or any order or proclamation of the governor of this State", is not personally responsible in any proceeding, action or suit "by reason of such act, order or proclamation being afterwards adjudged by any court of this state to be unconstitutional." Code, 61-5-18. Furthermore, the acts of a *de facto* officer are validated as to other persons by Code, 6-5-3.

Defendant maintains that plaintiff waived his right to interest when he failed to object to the action of the defendant in withholding sums due under the contract. It is admitted, however, that plaintiff informally participated, through his counsel, in the prosecution of the case of *Cole v. Oil and Gas Co., supra.* The conduct of plaintiff in failing to object does not justify this Court in holding that he waived his rights; nor is plaintiff estopped by such failure, for the reason that no one was injured by his conduct. Defendant voluntarily elected to rely upon an unconstitutional statute, withheld money from plaintiff which was due, and now seeks to avoid payment of interest. We are of opinion that the defendant is liable for interest accruing on the various monthly installments withheld from their respective due dates until paid.

The questions relative to the payment into court of the sum of $243.97 by defendant will not be discussed. What has been said disposes of the questions presented by this record.

Accordingly, the judgment of the Circuit Court of Kanawha County is reversed and the cause is remanded to that court for further proceedings consistent with this opinion.

*Reversed and remanded.*

HAYMOND, JUDGE, dissenting:

As I am convinced that the decision in this case is unsound in principle and imposes an unjust burden upon a corporate defendant for a course of conduct pursued by it in good faith in reliance upon the validity of an Act of the Legislature, passed in 1939, effective June 9 of that year, generally regarded as valid by other persons subject to its provisions, and not declared to be unconstitutional until more than six years after its enactment, I respectfully but emphatically dissent.

The good faith of the defendant in withholding the payment of the principal amount deducted by it under the provisions of the act from its effective date until after the institution of this action, and the acquiescence of the plaintiff in this conduct of the defendant until after the enactment was declared to be unconstitutional by this Court in *Cole* v. *Pond Fork Oil and Gas Company*, 127 W. Va. 762, 35 S. E. 2d 25, 160 A. L. R. 970, in 1945, are conceded, but given no consideration or effect, in the majority opinion. The payment by the defendant of the principal amount claimed by the plaintiff during the pendency of this litigation, and its offer to pay interest on the principal sum from June 26, 1945, the date the invalidity of the act was finally determined, are likewise admitted. In the face of these unquestioned facts the decision deals with the conduct of the defendant as that of a debtor who fails or refuses to pay an obligation which he knows he owes and as to which he also knows he has no defense. By the decision no recognition or effect is given to the actual existence of the act in question, Chapter 127, Acts of the Legislature, 1939, Regular Session, for a period in excess of six years during which both the plaintiff and the defendant believed it to be valid and dealt with each other on that basis. It is axiomatic in this jurisdiction and elsewhere in general, that an act of the Legislature is presumed to be valid, *State ex rel. Rickey* v. *Sims*, 122 W. Va. 29, 7 S. E. 2d 54; *State* v. *Page*, 100 W. Va. 166, 130 S. E. 426, 44 A. L. R. 501; *Swearingen* v. *Bond*, 96 W. Va. 193, 122 S. E. 539, 136 A. L. R. 1500; *State* v. *Haskins*, 92 W. Va.

632, 115 S. E. 720; *Sutherland* v. *Miller,* 79 W. Va. 796, 91 S. E. 993, L. R. A. 1917D, 1040; *State ex rel. Dillon* v. *County Court of Braxton County,* 60 W. Va. 339, 55 S. E. 382; *Osburn* v. *Staley,* 5 W. Va. 85, 13 Am. Rep. 640; 11 Am. Jur., Constitutional Law, Section 128; and that the courts, in considering the question of the constitutionality of a legislative enactment, will resolve all doubts in favor of its validity. *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504; *State* v. *Haskins,* 92 W. Va. 632, 115 S. E. 720; *Sutherland* v. *Miller,* 79 W. Va. 796, 91 S. E. 993, L. R. A. 1917D, 1040; *Cunningham* v. *Cokely,* 79 W. Va. 60, 90 S. E. 546, L. R. A. 1917B, 718; *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A, 1244; *Duncan* v. *Baltimore and Ohio Railroad Company,* 68 W. Va. 293, 69 S. E. 1004, Ann. Cas. 1912B, 272; *State ex rel. Dillon* v. *County Court of Braxton County,* 60 W. Va. 339, 55 S. E. 382. Yet, notwithstanding these well established and generally recognized principles of constitutional law, the holding of the majority deprives the defendant of the protection which they should afford and instead penalizes it for its recognition of and its adherence to them.

I have no quarrel with the statement of the general rule, in the majority opinion, that one who withholds money from the rightful owner on the date when it should be paid is liable for interest, but I deny its application in this case. None of the cases cited in connection with the statement of the rule, except *Bennett* v. *Federal Coal and Coke Company,* 70 W. Va. 456, 74 S. E. 418, 40 L. R. A. (N. S.) 588, Ann. Cas. 1913E, 578, hereafter discussed, bears any resemblance to the case at bar, and none of them deals with the question of the liability for interest of a person who in good faith withholds money under an act subsequently held to be unconstitutional. In *Mairs* v. *Central Trust Company,* 127 W. Va. 795, 34 S. E. 2d 742, payments of specific bequests under a will were involved and interest was allowed against the trustee and executor on the unpaid and wilfully converted portions of amounts, required by the will to be paid in monthly installments, from the time the will directed such payments to be made, and was not allowed upon a

legacy which was not paid promptly by the trustee and executor after the expiration of one year from the date of the order conferring authority upon the executor. In *Lockard* v. *City of Salem*, 130 W. Va. 287, 43 S. E. 2d 239, it was held that the plaintiff was entitled to interest on moneys expended by him in the operation of the water system of the defendant and for materials used in its plant, but was not entitled to interest on disputed, uncertain and unliquidated demands until the amount of such demands should be judicially determined. In *Lutz* v. *Williams*, 84 W. Va. 216, 99 S. E. 440, the defendant bank, which willfully and wrongfully appropriated funds received by it as a special deposit in payment of indebtedness from the depositor, the plaintiff, to the bank, was held liable for interest on the money so converted by it. In *Bennett* v. *Federal Coal and Coke Company*, 70 W. Va. 456, 74 S. E. 418, 40 L. R. A. (N. S.) 588, Ann. Cas. 1913E, 578, the plaintiff received payment of the principal sum due from a corporate defendant under an agreement which did not provide for the payment of interest. Subsequently, the plaintiff sued to recover interest on the principal amount from the time it became due until it was paid by the defendant. This court held that payment of interest being implied, the interest should be considered as damages incident to the debt, and could not be recovered in a subsequent separate action after payment of the principal sum. In *Shank* v. *Groff*, 45 W. Va. 543, 32 S. E. 248, the sufficiency of an alleged tender of the amount of the indebtedness was the principal question involved and, a proper tender not having been shown to have been made, interest was allowed.

In the *Bennett* case, in dealing with certain aspects of the law of interest, this Court held, in point 2 of the syllabus, that: "When there is no express contract to pay interest, there is generally an implied contract to do so", and in point 4 of the syllabus that "* * * where the contract does not so specifically provide for payment of interest, but the right thereto is by an implication, interest is considered as damages, and not as forming the basis of the action, and is recoverable only along with

the principal sum and as an incident thereto, and if the principal sum be accepted in settlement the right to the damages is lost and no separate subsequent action can be maintained therefor."

In the case at bar, as in the *Bennett* case, the contract made no specific provision for the payment of interest and, under the holding in that case, the right to interest arising by implication, the interest claimed by the plaintiff should be considered as damages which can be recovered only with and as incident to the principal sum and when payment of the principal sum is accepted by the claimant the right to recover interest as damages is lost. The majority distinguishes the *Bennett* case from this case on the ground that, in this case, the plaintiff sought to recover both the principal sum and the interest and accepted payment of the principal after the institution of the present action, whereas in the *Bennett* case the plaintiff, after accepting payment of the principal amount, sought to recover the interest in a subsequent separate action. The distinction envisioned by the majority between the two cases, based upon the difference just pointed out, is logically unsound and legally unwarranted. If the acceptance of payment of the principal defeats recovery of interest in instances in which the right to interest is implied and not expressly conferred by contract, as decided by this Court in the *Bennett* case, it follows necessarily that the time of the acceptance of the principal, whether before the institution of an action to recover interest on such principal, or during the pendency of an action to recover both the principal sum and interest on it, is of no consequence or importance whatsoever. As the right to interest was not expressly given by, but was implied from, the contract between the parties to this action, it existed merely as an incident of, and as dependent upon, the principal sum; and when that sum in full was paid to, and accepted by, the plaintiff his right to recover interest ceased to exist and, of course, was unenforceable in any suit or action. For this reason the plaintiff is not entitled to recover interest on the principal amount, which has been satisfied and ex-

tinguished by full payment made by the defendant and accepted by the plaintiff.

The view just stated is sustained by the reasoning employed in the *Bennett* case, and is fully supported by decisions directly in point in other jurisdictions. In *Davis* v. *Harrington*, 160 Mass. 278, 35 N. E. 771, the Supreme Judicial Court of Massachusetts held that a person who, after suit is brought, accepts payment of the principal, exclusive of interest due by way of damages for delay in payment, there being no contract to pay interest, can not afterwards recover, for the reason that interest allowable by way of damages is a pure incident to the debt, which falls when the debt itself is extinguished. In the opinion the Court, after discussing the facts, uses this language:

"We must therefore treat the case as one in which, after suit brought, the plaintiff accepted payment of his debt, not including a sum to which he was entitled as interest by way of damages for delay in payment. If there had been a contract to pay interest, the interest would have been a part of the debt, which would have stood no differently from the principal. *Sparhawk* v. *Wills*, 6 Gray, 163. *Andover Savings Bank* v. *Adams*, 1 Allen, 28. But interest which is allowed by way of damages and for the neglect to pay promptly is a mere incident of the debt, which falls when the debt itself is extinguished. It is well settled that in such a case, if the debt is paid, there can be no recovery afterwards for the interest which might have been collected. *Bond* v. *Cutler*, 10 Mass. 419. *Gage* v. *Gannett*, 11 Mass. 217. *Ordway* v. *Colcord*, 14 Allen, 59. *Robbins Cordage Co.* v. *Brewer*, 48 Maine, 481. *American Bible Society* v. *Wells*, 68 Maine, 572. *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244, 246. *King* v. *Phillips*, 95 N. C. 245.

"The payment of the principal sum due, having been accepted by the plaintiff, had the same effect as if it had included the interest, and the judgment must be for the defendant. It makes no difference that the payment was after suit brought. *Warner* v. *Bacon*, 8 Gray, 397, 405."

In *United Bros. of Friendship of Texas* v. *Kennedy* (Court of Civil Appeals of Texas), 193 S. W. 253, the appellees, named beneficiaries in a certificate of membership issued by the appellant which entitled them, upon the death of the insured, to demand and receive five hundred dollars, sued to recover the principal amount with interest from August 7, 1914, the date of the death of the insured. Suit was instituted on May 7, 1916. On May 10, 1916, the appellant paid to the appellees five hundred dollars which they accepted in full settlement of all claims. By a supplemental petition filed in the case the appellees acknowledged the payment of five hundred dollars and sought and recovered a judgment for $40.85, as interest which had accrued on the principal sum before it was paid. On appeal the Court of Civil Appeals held that where there is no obligation to pay interest as well as the principal, and interest is recoverable only as damages for nonpayment of the principal when due, the receipt of the principal as such in full is a bar to any claim for interest which is a mere incident of the debt.

Among the numerous cases in other jurisdictions which recognize and apply the general rule that where interest is recoverable only as damages and payment of the principal is accepted as such, interest can not be recovered because payment of the debt extinguishes the right to recover interest on it are: *Wickersham* v. *Whedon,* 33 Mo. 561; *Federal Deposit Insurance Corporation* v. *Farmers Bank of Newtown,* 238 Mo. App. 350, 180 S. W. 2d 532; *In re Liquidation of Badger State Bank, Badger, S. D.,* 70 S. D. 120, 15 N. W. 2d 744; *Alexander* v. *City of Atlanta,* 37 Ga. App. 788, 142 S. E. 170; *The Tenth National Bank* v. *City of New York,* 4 Hun. 429; *Heidelberg College* v. *National City Bank of Cleveland,* 65 Ohio App. 212, 29 N. E. 2d 572; *Canfield* v. *New-Milford Eleventh School District,* 19 Conn. 529; *Stewart* v. *Barnes,* 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781; *Hammond* v. *Carthage Sulphite Pulp and Paper Company* (D. C.), 34 F. 2d 157; *Graves* v. *Saline County, Illinois,* 7 Cir., 104 F. 61; *Southern Railroad Company* v. *Dunlop Mills,* 4 Cir., 76 F. 505; *United States* v. *Steinberg,* 2 Cir., 100 F. 2d 124; *Potomac Com-*

70

*pany* v. *Union Bank*, 19 F. Cases, No. 11,318, 3 Cranch C. C., 101. See also 1 C. J. 546; 1 R. C. L. 189; 33 C. J. 255; 47 C. J. S., Interest, Section 71b; 30 Am. Jur., Interest, Sections 15, 16 and 67; 17 C. J. 814.

In 25 C, J. S., Damages, Section 52, page 814, the text is in this language: "Where interest is recoverable as damages, it does not constitute a distinct claim and can only be recovered with the principal by action. So, when payment of the principal as such is made and accepted, no interest can be recovered, the payment of the debt extinguishing the right to recover interest thereon, and it has been held that the payment of the principal debt will defeat the recovery of interest thereon, even though such payment is made pending a suit for such principal and interest; * * *."

Despite the foregoing authorities, and many more to the same effect that could be cited, the majority opinion disposes of this important issue without discussion by the mere statements that the instant case is not within the rule laid down in the *Bennett* case because this action was brought to recover principal and interest, which were then unpaid; that no separate action has been brought; and that, although the principal was paid after this action was commenced, the facts at the time this action was brought control. No authority is cited in support of the legal effect of the situation described in the foregoing statements or to sustain the clearly erroneous conclusion that because this action was instituted to recover both principal and interest due at the time and because the principal was paid and accepted after this action was commenced, the interest, though allowable only as damages for delay in the payment of the principal, may be collected even though the principal, as to which the interest is a mere incident, has been previously paid and accepted in full. The obvious reason for the absence of citation of authority for the conclusion reached by the majority is that such conclusion is contrary to and without the support of the weight of text book or judicial authority.

The decision is also contrary to well recognized and firmly established rules relating to interest. As already pointed out, the defendant committed no wrong or practiced no fraud in withholding payment of the principal. It did so in reliance in good faith upon the validity of the act. The plaintiff shared in the belief of the defendant that the act was valid, until its unconstitutionality was judicially determined by this Court and, until that time, the plaintiff did not complain of, but acquiesced in, the retention of the principal by the defendant and made no demand for its payment. The conduct of both parties resulted from a mutual mistake of law. In these circumstances the plaintiff, though entitled to payment of the principal, was not entitled to interest on it until after the discovery of the mistake and demand had been made for its payment. When there has been no wrong in acquiring or retaining money, a demand is necessary to charge a person with interest; and in such case interest is computed only from the time of the demand. 30 Am. Jur., Interest, Section 46; 15 R. C. L., Interest, Section 25; Annotation 87 A. L. R. 652; *United States* v. *Knowles,* 106 U. S. 537, 1 S. Ct. 482, 27 L. Ed. 264; *United States* v. *Denvir,* 106 U. S. 536, 1 S. Ct. 481, 27 L. Ed. 264; *Gunn* v. *Howell,* 35 Ala. 144, 73 Am. Dec. 484; *Graded Free Colored Common Schools* v. *Graded Free White Common Schools,* 181 Ky. 810, 205 S. W. 904; *Northrop* v. *Graves,* 19 Conn. 548, 50 Am. Dec. 264; *Ashhurst* v. *Field,* 28 N. J. Eq. 315; *American Mutual Life Insurance Company* v. *Bertram,* 163 Ind. 51, 70 N. E. 258, 64 L. R. A. 935; *Gay* v. *Rooke,* 151 Mass. 115, 23 N. E. 835, 7 L. R. A. 392, 21 Am. St. Rep. 434; *Hunt* v. *Nevers,* 15 Pick (Mass.) 500, 26 Am. Dec. 616; *Byrne* v. *Byrne,* 289 Mo. 109, 233 S. W. 461; *State* v. *City and County of Milwaukee,* 158 Wis. 564, 149 N. W. 579, Ann. Cas. 1916A, 110; *Vashon* v. *Barrett,* 105 Va. 490, 54 S. E. 705; *Crauford's Adm'r.* v. *Smith's Ex'r.,* 93 Va. 623, 23 S. E. 235, rehearing denied, 25 S. E. 657. "Where money has been paid and received by common or mutual mistake of fact, and no fraud or misconduct can be imputed to the party receiving the same, interest will not be allowed except from the time when the mistake was discovered

and demand was made. Similarly, where money paid under mistake of law may be recovered, interest thereon may be recovered from the time of demand for repayment." 30 Am. Jur., Interest, Section 46. See also *Crauford's Adm'r.* v. *Smith's Ex'r.,* 93 Va. 623, 23 S. E. 285, rehearing denied, 25 S. E. 657; *Ashhurst* v. *Field,* 28 N. J. Eq. 315. In 47 C. J. S., Interest, Section 11, the statement is: "Interest will not be allowed on money paid and received through a mutual mistake of the parties, without fraud or misconduct on the part of either, until after discovery of the mistake and the ascertainment of the person to whom the money is rightly due. After the mistake has been discovered and the person receiving the money has had a reasonable time to satisfy himself as to the proper person to whom he should pay it, however, interest will be allowed in case of further delay in paying it over." Though the above quoted rules refer to money paid or received, they are, of course, applicable in principle to the retention of, or the failure to pay, the principal when the person failing to pay is guilty of no fraud or misconduct in acquiring or retaining it. The foregoing well established principles directly apply to the undisputed facts in this case, and, in my opinion, operate to defeat the claim of the plaintiff for interest on the principal sum paid him by the defendant.

The majority appears to base its decision primarily on the holding in *Norton* v. *Shelby County,* 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178, and it incorporates in point 2 of the syllabus, without qualification, a statement in the opinion in the *Norton* case, which is in these words: "An unconstitutional Act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." This passage is included in the point of the syllabus, in spite of the admission in the majority opinion that "The doctrine of the *Norton* case was qualified in the case of *Chicot County Dist.* v. *Bank,* 308 U. S. 371, 374, 60 S. Ct. 317, 84 L. Ed. 329, wherein it was stated: 'The Courts below have proceeded on the theory that the Act of Congress, having been found to be

unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. * * * It is quite clear, however, that such broad statements as to the effect of the determination of unconstitutionality must be taken with qualifications. The actual existence of the statute, prior to such determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, — with respect to particular relations, individual and corporate, and particular conduct, private and official.' " In the *Norton* case the plaintiff, holder of bonds issued by Commissioners of Shelby County in payment of a subscription by the county to stock in a railroad company, under a statute creating the Board of Commissioners and authorizing it to subscribe for stock, to issue bonds for the amount of the subscription, and to levy taxes for its payment, which statute, after the issuance of the bonds, was held to be unconstitutional, sued the county to enforce payment of the bonds held by him. The Supreme Court of the United States, affirming the action of the trial court, held the bonds invalid and that there could be no recovery on them by the plaintiff. The question of liability for interest on any principal sum paid or withheld under any provision of a statute subsequently declared to be unconstitutional was not expressly considered or discussed in the *Norton* case, but the decision in that case, which denied any recovery by the plaintiff, necessarily denied any possible claim for interest on the principal of the bonds. The holding in the *Norton* case does not support, but is contrary to, the conclusion reached by the majority in this case, and the citation of that case as authority for the decision of the majority is singularly inappropriate.

If, however, the principle expressed in the *Norton* case, that an unconstitutional act is not a law, confers no rights, imposes no duties, affords no protection, creates no office, and is, in legal contemplation, as inoperative as

though it had never been passed, may be considered to be in accord with the decision of the majority with respect to the question of interest, and as authority to support it, that doctrine should not have been adopted or followed by this Court. The passage in question, quoted in point 2 of the syllabus, has been qualified and virtually repudiated by the same court which pronounced it, in a later decision of that court. In discussing the quoted statement from the *Norton* case, the Supreme Court of the United States, in the more recent case of *Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371, 60 S. Ct. 317, 84 L. Ed. 329, used this language, some of which is set out in the majority opinion in this case: "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. *Norton* v. *Shelby County*, 118 U. S. 425, 442; *Chicago I. & L. Ry. Co.* v. *Hackett*, 228 U. S. 559, 566. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past can not always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

The doctrine of the *Norton* case has also been criticized by at least two appellate courts of recognized standing and ability. In *Lang* v. *Mayor, etc., of City of Bayonne,* 74 N. J. L. 455, 68 A. 90, 15 L. R. A. (N. S.) 93, the Court of Errors of New Jersey, in a well reasoned opinion by Chief Justice Gummere, in discussing the *Norton* case said, in part:

"Notwithstanding the great weight which the opinion of so distinguished a jurist carries with it; notwithstanding that *Norton* v. *Shelby County* has been frequently cited with approval in other jurisdictions, I am unable to accept as sound the doctrine upon which it is rested, namely, that an unconstitutional law is void *ab initio* and affords no protection for acts done under its sanction. That it works injustice in its application to the citizen is apparent. * * *.

"The vice of the doctrine of *Norton* v. *Shelby County,* as it seems to me, is that it fails to recognize the right of the citizen, which is to accept the law as it is written, and not to be required to determine its validity. Each of these functions has been delegated by the constitution, the one to the judicial and the other to the legislative branch of the government. And it is to be observed that the judicial function of determining the validity of statutes is confined within a very narrow scope. Courts are not vested with the general supervision of legislation. They have received no authority from the people to inspect each statute, as it comes from the hands of the legislature, and declare whether or not it infringes constitutional limitations. The function of the judicial department with respect to legislation deemed unconstitutional is not exercised *in rem*, but always *in personam. Allison* v. *Corker,* 38 Vroom 596. Only such statutes as affect the rights of parties to judicial proceedings are ever subjected to the scrutiny of the courts. And these are comparatively few. Of the twenty-four hundred and more acts of the legislature passed in this state during the last ten years, less than four hundred have received judicial consideration. The remaining two thousand which are

upon the statute book (except those which have been repealed by the legislature) are accepted and enforced as a part of the law of the land. And this, in my judgment, is the only way in which a government such as ours can be safely administered. To require the citizen to determine for himself, at his peril, to what extent, if at all, the legislature has overstepped the boundaries defined by the constitution in passing this mass of statutes would be to place upon him an intolerable burden, one which it would be absolutely impossible for him to bear— a duty infinitely beyond his ability to perform. In my opinion the provisions of a solemn act of the legislature, so long as it has not received judicial condemnation, are as binding upon the citizen as is the judgment of a court rendered against him so long as it remains. unreversed."

In *Texas Company* v. *State,* 31 Ariz. 485, 254 P. 1060, 53 A. L. R. 258, the Supreme Court of Arizona, in refusing to follow the doctrine of the *Norton* case, employs this language: "The legal question involved may be stated as follows: Is a citizen liable to the state for a penalty because he has in good faith followed the provisions of a law which on its face was duly enacted, when those parts under which he acted are afterwards held to be unconstitutional? There are two distinct lines of authority in this country, bearing on the matter, and reaching opposite conclusions. The leading case on one side is *Norton* v. *Shelby County,* 118 U. S. 425, 30 L. Ed. 178, 6 Sup. Ct. Rep. 1121 ( see, also, Rose's U. S. Notes). The substance of that decision, so far as it is apropos to the question above stated, is summed up in the following statement of Justice FIELD: 'An unconstitutional act is not a law; it confers no rights; it imposes no duties; *it affords no protection;* it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.' (Italics ours.)

"This language has been approved and followed many times in different states. The contrary doctrine is best illustrated by the language of *Lang* v. *Mayor, etc.,* 74 N. J. L. 455, 122 Am. St. Rep. 391, 12 Ann. Cas. 961, 15

L. R. A. (N. S.) 93, 68 Atl. 90, wherein the court says, quoting from *State* v. *Carroll,* 38 Conn. 449, 9 Am. Rep. 409:

" 'Every law of the Legislature, however repugnant to the Constitution, has not only the appearance and semblage of authority, but the force of law. It cannot be questioned at the bar of private judgment, and if thought unconstitutional, resisted, but must be received and obeyed as, to all intents and purposes, law, until questioned in and set aside by the courts.'

"This case has also been repeatedly followed in numerous jurisdictions. Strange as it may seem, the writers of both opinions base their conclusions principally upon the case of *State* v. *Carroll, supra.* We have examined that case carefully, and are of the opinion that it emphatically upholds the rule adopted in *Lang* v. *Mayor, etc., supra,* when the question for decision is the one which we have stated."

The principle expressed in the *Norton* case was held to be inapplicable by the Supreme Court of North Carolina in a case involving a criminal charge against public officers for failure to perform duties imposed by a statute which was attempted to be repealed by a later statute that was subsequently held to be unconstitutional. *State* v. *Godwin,* 123 N. C. 697, 31 S. E. 221. In the opinion in that case the court said:

"The defendants here cannot be punished under the criminal law for failing and refusing to perform the duties of an office which office and the duties pertaining to it had been sought to be repealed by a subsequent Act of the Legislature, afterwards declared by the courts to be unconstitutional. Until the subsequent statute was declared to be unconstitutional by competent authority, the defendants, under every idea of justice and under our theory of government had a right to presume that the lawmaking power had acted within the bounds of the Constitution, and their highest duty was to obey.

"* * *. The counsel for the prosecution cited to the

court in support of his position the case of *Norton* v. *Shelby County,* 118 U. S. 425, and especially to that portion of the opinion wherein it was declared by the court that 'an unconstitutional Act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is in legal contemplation as inoperative as though it had never been passed.' The opinion in that case was rendered upon the effect of an executory contract made by one who claimed to be a public officer, the office having been created without authority of law. For the reasons given in this opinion, the case of *Norton* v. *Shelby County, supra,* does not apply to the facts of this case."

In *Warring* v. *Colpoys, U. S. Marshal,* 74 App. D. C. 303, 122 F. 2d 642, 136 A. L. R. 1025, decided by the United States Court of Appeals for the District of Columbia, the opinion in which was written by Justice Vinson of that court, now Chief Justice of the United States, the doctrine that an act which has been declared to be unconstitutional never had any force or effect, is discussed in this language: "It has been commonly thought that if an act is declared unconstitutional, it never had any force or effect. Yet a realistic approach is eroding this doctrine. * * *. When a statute is declared unconstitutional it falls because it must yield to the basic, superior law. There is much more reason to argue that the unconstitutional statute never was the law. Yet today even such a statute is an operative fact and decisions made under its color have the blessings of *res judicata.*"

A question similar in principle to that presented in the case at bar, whether the plaintiff is entitled to interest on the principal· withheld by the defendant in reliance upon the validity of an act of the Legislature subsequently declared to be unconstitutional, was considered and determined by the Supreme Court of Illinois in *Board of Highway Commissioners of Bloomington Township* v. *City of Bloomington,* 253 Ill. 164, 97 N. E. 280. In that case the board of commissioners of the township levied, collected, and paid to the city under the authority of an act of the

Legislature, which was subsequently held to be unconstitutional, taxes in the aggregate amount of $40,987.48, which the city expended for repair and maintenance of its streets. After the act was declared to be unconstitutional the board sued the city and recovered a judgment for $30,037.00, which included the principal recoverable and $1,384.93 interest. Upon appeal by the defendant, the city, the Supreme Court held that the principal paid under the unconstitutional third proviso of section 16 of the act could be recovered, but that the plaintiff, the board of commissioners, was not entitled to interest upon the principal and entered a remittitur of the interest of $1,384.93. In the opinion, with respect to the question of interest, the Court said: "The appellant contends that the court erred in allowing $1,384.93 interest upon the amount of money paid to the city. In our opinion, this error is well assigned. There is nothing in this record to impeach the good faith of appellant in the receipt and expenditure of this money. While it did not belong to the city, the existence of the third proviso in section 16 of the road and bridge law was an apparent authority for the receipt of this money by the city. There is no element of tort connected with the receipt or conversion of this money, nor has there been any vexatious delay in paying it over to the appellee. There is therefore no legal ground upon which the claim for interest can be sustained." The holding in this case is significant for in the opinion the court adhered to the doctrine of the *Norton* case as to the inoperative effect of an unconstitutional act of the legislature; but it is obvious that the Illinois court did not consider the doctrine of the *Norton* case as authority bearing upon or applicable to the question of liability for interest on the principal paid by the plaintiff in reliance upon the validity of the unconstitutional enactment.

In the later case of *Board of County Commissioners of the County of Jackson, Kansas* v. *United States of America,* 308 U. S. 343, 60 S. Ct. 285, 84 L. Ed. 313, decided in 1939, the defendant, Board of County Commissioners of the

County of Jackson, though required to refund the principal of taxes assessed and collected by it on a fee simple land patent issued to M-Ko-Quah-Wah, a Pottawatomie Indian, in whose behalf the plaintiff, the United States of America, sued to recover the taxes, collected before the patent was cancelled, with interest, the Supreme Court of the United States held that the plaintiff, United States of America, was not entitled to recover interest on the principal amount of the taxes, and modified to that extent a judgment of the District Court, affirmed by the Circuit Court of Appeals, for principal and interest amounting to $3,277.49. In the opinion the Court said:

"* * *. The cases teach that interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable. *United States* v. *Sanborn,* 135 U. S. 271, 281; *Billings* v. *United States,* 232 U. S. 261.

"Jackson County in all innocence acted in reliance on a fee patent given under the hand of the President of the United States. Even after Congress in 1927 authorized the Secretary of the Interior to cancel such a patent, it was not until 1935 that such cancellation was made. Here is a long, unexcused delay in the assertion of a right for which Jackson County should not be penalized. * * *. Whatever may be her unfortunate duty to restore the taxes which she had every practical justification for collecting at the time, no claim of fairness calls upon her also to pay interest for the use of the money which she could not have known was not properly hers."

The holding in the two cases last cited directly apply in principle to the case at bar and, in my judgment, should be decisive of the question of interest in favor of the defendant.

It should perhaps be observed that no question of the right of the plaintiff to recover the principal amount withheld by the defendant arises in this case, and that the question here involved relates solely to the claim for in-

terest. As already pointed out the principal has been paid and accepted, and, in consequence, the recent case of *Jones* v. *Columbian Carbon Company*, 132 W. Va. 219, 51 S. E. 2d 790, cited in the majority opinion, in which it was held that the amount of principal withheld by the defendant, under a contract based on and made to comply with the Act of 1939 before it was declared to be unconstitutional, could be recovered by the plaintiff, but in which no question as to interest was involved, has no present application.

For the reasons indicated, and under the numerous authorities which I have cited, quoted from and discussed, I would affirm the action of the circuit court in denying the claim of the plaintiff for interest.

I am authorized to state that Judge Riley concurs in this dissent.