**UNITED STATES of America,
Appellee,**

v.

**Bernard W. COBLENTZ, Defendant-
Appellant.**

**No. 349, Docket 71–1943.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1971.

Decided Jan. 10, 1972.

Cono R. Namorato, Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, John P. Burke, Murray S. Horwitz, Attys., Dept. of Justice, Washington, D. C., Robert A.

Morse, U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Jacob W. Heller, New York City (Weiss, Bronston, Rosenthal, Heller & Schwartzman, Herman Schwartzman, Elkan Abramowitz, New York City, of counsel), for defendant-appellant.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The appellant was indicted in the Eastern District of New York on February 26, 1970 on three counts of willfully attempting to evade his federal income tax for the years 1963, 1964 and 1965 in violation of Section 7201 of the Internal Revenue Code of 1954. He was tried from March 29, 1971 through April 7, 1971 before the Hon. John F. Dooling, Jr., United States District Judge. The jury returned a verdict of not guilty on the first two counts (1963 and 1964) and guilty on count three (1965). Thereafter appellant moved to set aside the guilty verdict and for judgment of acquittal or, in the alternative, for a new trial. Judge Dooling denied the motions in a Memorandum and Order on May 6, 1971. The appellant was subsequently sentenced to a one year term of imprisonment, eleven months of which were suspended, plus an uncommitted fine in the amount of $5,000. He was released on his own recognizance pending this appeal from the judgment of conviction. We affirm the conviction.

The appellant, Coblentz, is a New York attorney specializing in representing property owners in condemnation proceedings, particularly those involving the City of New York. The basis for Coblentz's indictment and subsequent conviction was his unorthodox method of reporting the fees he received in his condemnation practice on his income tax returns. When an award was made, his client would receive multiple checks from the City of New York, one of which would represent Coblentz's fee plus any advances or disbursements. The client would endorse that check over to Coblentz who would then place the check in a cabinet in his office which contained other undeposited checks which were filed chronologically. Coblentz would deposit only a portion of the checks in the year they were received. The remainder were deposited from one to four years after the year of receipt. Since the checks were drawn by the City of New York, they would be honored up to five years after the date of issue. Coblentz did not report these fees as income in the year they were received by him but usually in the year in which he deposited or negotiated the check. Pursuant to the rules of the Appellate Division, First and Second Departments, Coblentz did, however, file with the Judicial Conference of the State of New York, Closing Statements which reported the fees he received within fifteen days after they were awarded. A comparison of these Closing Statements and his income tax returns, revealed that Coblentz had received fees from 1962 through 1965 which exceeded the income he had reported for those years by about $75,000.

■ The government's evidence established that in 1965 Coblentz reported to the Judicial Conference that he had received fees of $47,751.93. He deposited only $7,600.33 of this amount, and reported a gross income of $22,380 which included checks received in prior years but not reported until 1965. In 1963 the Closing Statements indicated fees of $25,188.08 while the tax return reported gross receipts of $22,600. In 1964 the Closing Statements indicated fees of $58,388.39 and the tax return reported gross receipts of $21,300. There is no question but that there were substantial discrepancies during the period covered by the counts of the indictment between income received and income reported. It is also beyond any question that the receipt of these checks constituted the constructive receipt of income in the year they were received whether Coblentz elected to then take down the cash or not. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930);

Weil v. Commissioner, 173 F.2d 805, 806 (2d Cir.), cert. denied, 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498 (1949); Ross v. Commissioner, 169 F.2d 483, 490 (1st Cir. 1948); Hedrick v. Commissioner, 154 F.2d 90, 91 (2d Cir. 1946), cert. denied, 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946). Treas.Reg. § 1.451–2. See generally 2 J. Mertens, Law of Federal Income Taxation § 10.01 (1967).

■ Appellant's major argument on appeal is not that tax was not due and owing in 1965 but that the evidence was insufficient as a matter of law to warrant the jury's finding that he "willfully" evaded his tax. It is essential that the government establish beyond a reasonable doubt that Coblentz acted willfully and knowingly with the specific intent to evade the tax. Further, this specific intent must be established by evidence other than the mere understatement of income. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■■ We find that the record amply supports the jury's finding of willful tax evasion by Coblentz. From 1963 to 1965 Coblentz reported a total taxable income of $30,351.09 when in fact it should have been $109,017.42. This would have resulted in an additional tax of $5,243.98 in 1963, $21,581.44 in 1964 and $13,686.61 in 1965. This represents a consistent pattern of not reporting large amounts of income which is itself evidence of willfulness. Holland v. United States, *supra*, 348 U.S. at 139, 75 S.Ct. 127; United States v. Moran, 236 F.2d 361, 362 (1956), cert. denied, 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118 (1956). Since Coblentz admittedly prepared and signed the Closing Statements for the Judicial Conference there can be no question but that he was aware of this source of income. Moreover, he supplied the information which was used by his accountants to prepare the returns. See United States v. Levy, 449 F.2d 769, 770 (2d Cir. 1971). Further evidence of willfulness was established by his filing in 1961, 1962, 1963 and 1964 as the "un-

married head of household" which resulted in a lower tax than had he filed properly as "married, filing separately" (his wife was filing separately these years). The jury apparently found it incredible that he could be mistaken about his marital status and further incredible that on his 1961 tax return he could "mistakenly" give the address of his sister, instead of the residence where he was living with his wife. It is well established that the jury could properly have considered this evidence (relating to the years 1961 through 1964) on the issue of intent to defraud in 1965, even though they found appellant not guilty of tax evasion for the years 1963 and 1964. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Schaefer v. United States, 265 F.2d 750, 754–755 (8th Cir.), cert. denied, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed. 2d 82 (1959); Bryson v. United States, 238 F.2d 657, 663 (9th Cir. 1956), cert. denied, 355 U.S. 817, 78 S.Ct. 20, 2 L. Ed.2d 34 (1957); see Steckler v. United States, 7 F.2d 59, 60 (2d Cir. 1925) (Hand, J.). There is additional evidence of willfulness in the record. Coblentz, an attorney, kept no books or records except the Closing Statements required by the Judicial Conference; he did not even maintain check stubs for the years 1963 to 1965; he estimated in round figures on his tax return both his income and his expenses and even his savings bank interest.

Appellant's major defense to the charge of willfulness was his claimed unawareness of the "constructive receipt" doctrine; that in good faith, he relied upon the advice of experts upon the theory that income was realized only when the check was deposited. Judge Dooling's charge to the jury very carefully protected the defendant's mistake of law position. He charged that the defendant could not be convicted unless the jury found that Coblentz "believed that he owed substantially more tax than was shown by the tax return as filed" and that he filed a return "knowing that it was fraudulent or false as to

a material matter for the specific purpose of evading or defeating the collection of the additional tax that he believed was due over and above the tax disclosed by the return as filed." This charge was repeated in detail including the admonition that "If you find that the defendant did not have the specific intention of evading or defeating a tax that he believed to be due over and above the tax shown on the return, then you must acquit the defendant of the charge of willfully attempting to evade or defeat the tax."

The jury obviously did not accept the contention that Coblentz was making a good faith error. In addition to the evidence of willfulness already discussed, we find ample support for the skepticism of the jury in the record. The testimony of Coblentz that he had been advised by an accountant that he need not report checks as income until deposited was considerably weakened by his inability to recall the name of the accountant although he claimed that he had shared office space with him. His testimony that the Internal Revenue Service was aware of his system and had approved it, was hardly credible when he stated on cross-examination that he had previously been assessed for a deficiency in 1954 or 1955 because of a "theory of accounting." The testimony of appellant's accountant was also damaging when he admitted that fee checks totalling $8,318.10 received in 1963 and cashed in 1967, were not included in the gross receipts reported by appellant in 1967. This was hardly consistent with the claimed theory that fee checks became income only when cashed.

Appellant's motion for a directed verdict of acquittal was denied at the close of the government's case. He now asks this court to reconsider the long standing rule of the Second Circuit that such a motion be denied if there is "substantial evidence" to support a finding of defendant's guilt. United States v. Feinberg, 140 F.2d 592 (2d Cir.), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944). This rule has been repeatedly enunciated in this Circuit (see Neaderland v. Commissioner, 424 F.2d 639, 642 (2d Cir.), cert. denied, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970)) and we see no reason to adopt any other version. In any event, if, after the denial of a motion for acquittal at the end of the government's case, the defendant offers evidence, he waives any claim as to the sufficiency of that case considered alone. United States v. Rosengarten, 357 F.2d 263, 266 (2d Cir. 1966).

After considering all of the other points raised on appeal and finding them to be without merit, we affirm.