**UNITED STATES of America**

v.

**Eugene F. HOUSE and Evelyn M. House.**

**Crim. No. 14831.**

United States District Court,
M. D. Pennsylvania.

March 27, 1974.

**1404**

S. John Cottone, U. S. Atty., Scranton, Pa., for plaintiff.

Paul A. McGlone, Scranton, Pa., for defendants.

### MEMORANDUM AND ORDER

NEALON, District Judge.

Defendants, Eugene F. House and Evelyn M. House, his wife, were found guilty by a jury on 3 counts of tax evasion in violation of 26 U.S.C. § 7201 and have moved for judgment of acquittal or, in the alternative, a new trial. The Government's evidence indicated that defendants understated income of $48,790.44 for taxable year 1964 with a tax deficiency of $24,909.24; $28,924.62 for 1965 with a tax deficiency of $14,176.73; and $76,176.38 for 1966 with a tax deficiency of $42,145.07. In support of their motion for judgment of acquittal, defendants assert that the Government's evidence was legally insufficient and, in addition, that a new trial is required because Government counsel made prejudicial remarks to the jury; the Government used illegally obtained evidence; and that defendant, Evelyn House, was physically and mentally unable to cooperate in her defense.

### JUDGMENT OF ACQUITTAL

The evidence supporting the Government's case was, as follows:

Defendant, Eugene F. House, owns and operates House Wood Products Company, a proprietorship, which manufactures wooden pallets. His wife, Evelyn M. House, assisted him in the operation of the business and, according to her husband, took care of the bookkeeping and maintained all company records. The tax returns in question were prepared by accountants from summary figures furnished by Mrs. House, usually on several sheets of paper extracted from a spiral notebook. The returns were submitted by the accountants on a cash basis. An analysis of invoices and cancelled checks of defendants' customers revealed, as noted above, substantial understatement of income for 1964, 1965 and 1966. Furthermore, approximately $80,000 in checks received in 1964 was withheld and not deposited or negotiated until 1965; $78,000 in 1965 was not deposited until 1966, and $40,000 in 1966 was not deposited until 1967. In addition, customers' checks were cashed at other business places and some were used by Mr. House to purchase securities, viz., checks totaling $17,280.87 were cashed at Loeb, Rhoads & Co. brokerage house in 1964 and $2,400.84 in 1965.

The defense consisted largely of denials of knowledge and intent as well as testimony by Mr. House that Internal Revenue Service Agents took his business records without permission and never returned them thereby impairing his defense as well as showing prejudice on the part of the prosecution. Obvious-

ly, the jury was not impressed by this contention.

■ With reference to the Government's evidence, it was more than ample to establish the guilt of both defendants. As to Mr. House, the jury could have found that some checks received from customers were not deposited in the company business account at the bank, but were cashed or negotiated elsewhere; he purchased securities with business checks; he purchased personal items with business checks; he told the Agents falsely that his records had been destroyed by Federal Aviation employees; he exhibited a letter from Frank A. Sillaman that his bank records were destroyed in a flood, which letter Sillaman denied ever writing; he falsely claimed that his business records were never returned by I.R.S. agents; he withheld substantial amounts of checks in the year received and deposited them in subsequent years;[1] and he followed a pattern of understating income.[2] As to Mrs. House, in addition to the pattern of understating income and the withholding of checks in the year received, she personally kept the books and provided the accountants with summary sheets showing sales, purchases, labor and other expenses which the jury could have determined were false. The inference of willful intent to evade the payment of tax is fully sustained by the evidence.

## NEW TRIAL

Defendants' initial argument in furtherance of their request for a new trial is that Government counsel's summation was prejudicial and inflammatory in the following manner:

"MR. WALKER: Members of the Jury, Mr. McGlone mentioned to you that the Internal Revenue Service did not investigate the income tax returns, or at least no evidence was presented as to an investigation or examination of the tax payers' income tax returns for any years prior to 1964 or any years subsequent to 1966.

"Members of the Jury, based on the evidence that you have heard in court, you have the right to conclude that the method of tax evasion that this tax payers pursued in 1964, 1965 and 1966 they had pursued in prior years and may very well have pursued in subsequent years to 1967. Why the Government elected to prosecute them then for the years 1964, 1965 and 1966 is not your concern here. That was a decision of the Internal Revenue Service. Your function is only to conclude and decide whether or not these defendants individually evaded the just tax, the legal tax, that was due for the years in question."

■ The Government contends that this was legitimate argument inasmuch as a part of the defense was that checks were withheld because defendants thought they were reporting on an accrual basis thereby raising the inference that the understated amounts were, in fact, reported in prior and subsequent years. Defense counsel inferred in his summation that the failure of the Government to investigate or examine prior and subsequent years' returns would lend support to the defense position. Consequently, it would appear that it was appropriate for Government counsel to remove this cloud (defendants' accountants testified that a cash and not accrual basis was used) by inferring in a similar manner that the method of tax evasion advanced by the Government may also have been pursued in prior and subsequent years. See Baker v. United States, 115 F.2d 533, 544 (8th Cir. 1940). But even if it were improper argument, it was harmless beyond a reasonable doubt, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and, moreover, was fully corrected by the Court's admonishment to the jury, as requested by defense counsel:

"THE COURT: Members of the Jury, we're concerned here only on the charges in the indictment, and that is

---

1. See United States v. Coblentz, 453 F.2d 503 (2nd Cir. 1972).

2. See Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

for the calendar years 1964, 1965 and 1966. So to the extent that you have interpreted Mr. Walker's remarks as meaning that you have the right to decide if the 1963 and 1967 returns were improperly submitted, then you should disregard that. In other words, we are not concerned with the guilt or innocence of these defendants as to 1963, 1962, 1961 or 1967 returns. So to the extent that you may have interpreted Mr. Walker's remarks to give you that opportunity or that prerogative, then you're to disregard that."

See United States v. Furtney, 454 F.2d 1 (3rd Cir. 1972).

Defendants also asserted that the IRS Agents obtained evidence illegally from defendants' accountant and from records at the bank. This argument was previously considered by this Court and rejected on a motion to suppress. United States v. House, Criminal No. 14831 (M.D.Pa., filed Aug. 1, 1973). In Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the Supreme Court held that where a taxpayer turns over his business records to his accountant, he cannot assert 4th or 5th Amendment rights against the disclosure of such records to the IRS. The Court reasoned that in such a situation "there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused." It is true that defendants' accountant does not recall granting permission to the Revenue Agent to remove the records but he would have no constitutional right to refuse. Further, I previously ruled on the motion to dismiss that permission was given and the jury obviously was not persuaded to the contrary as the same testimony was submitted at the trial bearing on the issue of willfulness. Moreover, defendants have no proprietary interest in either the bank records or customers' records sufficient to support a 4th or 5th Amendment constitutional challenge. Donaldson v. United States, 400 U.S. 517, 91 S. Ct. 534, 27 L.Ed.2d 580 (1971).

Finally, defendants contend that Mrs. House was physically and mentally unable to cooperate with her counsel or to participate in her own defense, which, not only adversely affected her rights, but denied her husband the benefit of her testimony and assistance. I have traveled the long road concerning Mrs. House's illness and I previously concluded, and reemphasize here, that in my opinion she was fully capable of assisting in her defense. She was allowed to submit her alleged condition to the jury in support of her contention that her memory is poor and that she was depressed and unaccountable for her actions since the death of her son in an automobile accident. No purpose will be served by reviewing again the medical examinations made, and hearings conducted, concerning her condition as the results are contained in some detail in this file. Except for some inconclusive observations of her personal physician and his nurse (Mrs. House's niece), all other evidence points strongly to physical and mental competency. See Martin v. United States, 463 F.2d 220 (3rd Cir. 1972).

Defendants' motion will be denied.