EXCEL DRUG CO., INC., Appellant,

v.

MISSOURI DEPARTMENT OF REVENUE, Respondent.

No. 62333.

Supreme Court of Missouri, En Banc.

Dec. 15, 1980.

Henry L. Graf, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County which affirmed the decision of the Director of Revenue to assess additional sales tax, interest, and a fraud penalty against Excel Drug Company.

The appeal was initially taken to the Missouri Court of Appeals, Western District. That court, however, by its order of June 17, 1980, transferred the case to this Court for the reason that the case involves construction of the revenue laws of the State of Missouri and therefore is within the exclusive appellate jurisdiction of the Supreme Court. Mo.Const. art. V, § 3.

Appellant is in the drug and sundry business in Kansas City, Missouri. Its president is Louis Ferro.

An investigation by the Special Investigation Bureau of the Department of Revenue was begun in September 1975. The Bureau examined appellant's books and records for the period January 1, 1970, through March 31, 1973, and, as a result, the appellant was assessed additional state sales tax, Kansas City sales tax, Kansas City transportation sales tax, interest and a 25% fraud penalty.

As the assessment was not resolved at an informal hearing, appellant filed a Petition for Reassessment. The Department's formal hearing on this petition was held March 21, 1978. Testimony of the Bureau's agents established that appellant's president, who prepared the sales tax returns involved, admitted to the investigating agents that the gross sales amounts shown on the returns, and from which the tax liability was determined, were "pulled * * * out of his head." At the request of Chief Justice Bardgett during oral argument in this Court, the state and appellant prepared a synopsis of the sales figures reported by Ferro on the returns and those found by the Bureau's audit. This synopsis was made part of the Court's record on September 24, 1980. Broken down by year, these figures show:

| YEAR | GROSS SALES AS FOUND BY AUDIT | GROSS SALES AS SHOWN ON APPELLANT'S RETURNS | DIFFERENCE |
|------|---|---|---|
| 1970 | $192,454.92 | $ 56,148.27 | $136,306.65 |
| 1971 | 215,074.63 | 52,976.31 | 162,098.32 |
| 1972 | 265,459.45 | 54,931.61 | 210,527.84 |
| 1973 | 70,209.07 | 15,261.13 | 54,947.94 |
| Total | $743,198.07 | $179,317.32 | $563,880.75 |

Because of the discrepancy between the gross sales figures reported by Ferro and the actual gross sales as found by the audit (which appellant does not challenge), the Director assessed a deficiency and interest. Because of the gross discrepancy and evidence that appellant's president, Ferro, took the figures out of his head and attempted to amend the returns *after* the Department's investigation began, the Director assessed a fraud penalty of 25% under § 144.-500. The exact assessment was:

| | |
|---|---|
| Additional Missouri state sales tax: | $16,202.92 |
| Interest computed as of 3/31/78: | 15,363.50 |
| Additional K.C. Pub. Mass Transp. tax: | 1,713.92 |
| Interest computed as of 3/31/78: | 1,271.83 |
| Fraud penalty: | 4,479.18 |
| Total: | $39,031.35 |

The Director also concluded that additional interest in the sum of one-half of one per cent per month or six per cent per annum would be charged from April 1, 1978, until July 31, 1978, and that from July 31, 1978, interest would accrue at the rate of one per cent per month or twelve per cent per annum until the assessment was paid in full.

The first question on appeal is whether the Jackson County Circuit Court erred in taking jurisdiction and reviewing this case. It is contended that review should have been in the Administrative Hearing Commission.

Section 161.273, RSMo 1978, enacted as part of Senate Bill No. 661, provides for appeals from decisions of the Director of Revenue to be taken to the Administrative Hearing Commission. Section A of that bill provided:

"This act shall become effective August 13, 1978. Any hearing or review commenced prior to such date shall proceed pursuant to the law applicable at the time of its commencement."

As the Director's decision in this case was filed August 14, 1978, it is argued that *review* of that decision could only have commenced after August 13, 1978, and therefore such review should have been in the Administrative Hearing Commission rather than the circuit court.

Upon a motion for rehearing in *Labrayere v. Goldberg*, 605 S.W.2d 79 (Mo. banc 1980), this jurisdictional issue was settled when the Court by order dated October 15, 1980, modified its opinion by adding the following:

"By this decision we do not foreclose review in the Administrative Hearing Commission of certain pending disputes in which certain taxpayers chose to pursue review in that forum. Sections 144.-261 and 536.100, RSMo 1969, confer jurisdiction for judicial review by circuit courts. Sections 144.261 and 161.273, RSMo 1978, confer jurisdiction for review by the Administrative Hearing Commission. * * * Because of the latent legislative ambiguity, the governmental interpretation thereof, and taxpayers' reliance thereon, the jurisdiction of the circuit courts and the Administrative Hearing Commission is deemed to be concurrent for the purpose of reviewing cases filed in either forum between August 13, 1978, and October 15, 1980." *Id.* at pp. 84–85.

By reason of *Labrayere, supra*, jurisdiction was proper in the circuit court as well as the Administrative Hearing Commission in this sales tax case.

Appellant challenges the circuit court's affirmance of the Director's finding of fraud on the ground that no fraud was proved.

Section 144.500 provides a penalty for fraud or evasion of the sales tax. It reads:

"If fraud or evasion on the part of a person is discovered by the director of revenue, he shall determine the amount of which the state has been defrauded, shall add to the amount so determined a penalty equal to twenty-five percent thereof, and shall assess the same against the person. The amount so assessed shall be immediately due and payable; provid-

ed, however, that the director of revenue shall promptly thereafter give to said person written notice of such assessment and penalty, which notice shall be served personally on such person, or by registered mail. Such person shall have the right to petition for hearing of such assessment as is provided herein."

The Missouri courts have addressed this provision only once, in *State ex rel. Die Casting Corp. v. Morris*, 358 Mo. 1170, 219 S.W.2d 359 (banc 1949). In that case, this Court defined "fraud or evasion" under the statute as "a positive, intentional deceit or subtle device to escape the tax." *Id.* at 1175, 219 S.W.2d at 362.

In our case the Director, without citing authority, determined that fraud was proved. His decision states:

"What appears from the documents introduced without objection at the hearing is a consistent pattern of gross under-reporting of sales tax. * * * [I]n no fewer than five instances, testimony was adduced that the figures contained on the sales tax returns were purely imaginary and taken out of the air. No attempt was made by the taxpayer to accurately report his state sales tax. Petitioner maintains that this consistent pattern of operation showed mere error on the part of Petitioner and not an attempt to fraud [sic] the state of Missouri. Such an assertion is wholly without merit.

"Evidence was adduced at the hearing that Mr. Ferro, President of Excel Drug, amended various returns in 1973. These amendments were filed after the investigation had begun by the Department of Revenue. Once the tax deficiency was brought to the attention of Mr. Ferro by his bookkeeper, he attempted to make up the sales tax deficiency.

"The consistent pattern of under-reporting of sales tax, the undisputed testimony of the Department of Revenue's investigators at the formal hearing and the fact that Petitioner's president signed all the sales tax returns under penalty of purjury [sic] as having examined all of the records upon which the returns were

based clearly indicate an intent on the part of Petitioner to defraud the state of Missouri of sales tax properly owed, or at the very least to engage in a course of conduct intended to evade the paying of sales tax."

The Director's conclusion that fraud was present in this case can be sustained by reference to general fraud principles. It has been said that each case of fraud must be decided upon its own facts. *Wood v. Robertson*, 245 S.W.2d 80, 82 (Mo.1952). "And while it is true that fraud is, of course, never to be presumed it must be borne in mind that fraud is seldom susceptible of proof by direct evidence, but must almost invariably be shown by circumstances surrounding the transaction from which the fraud of the one charged with its commission may be reasonably inferred." *Salmon v. Brookshire*, 301 S.W.2d 48, 53 (Mo.App.1957).

The federal courts find fraud in tax cases where there has been, as in our case, a consistent pattern of underreporting of income. The cases hold that although specific intent must be established by evidence other than the mere understatement of income, *United States v. Coblentz*, 453 F.2d 503, 505 (2d Cir. 1972), wilfulness may be established by a consistent pattern of not reporting large amounts of income. *United States v. Vannelli*, 595 F.2d 402, 405 (8th Cir. 1979). *See also Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150, reh. den. 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955); *Gatling v. Commissioner*, 286 F.2d 139, 145 (4th Cir. 1961) (and cases cited therein); and *Adler v. Commissioner*, 422 F.2d 63 (6th Cir. 1970).

In *Rogers v. Commissioner*, 111 F.2d 987 (6th Cir. 1940), husband and wife taxpayers underreported their income on their federal income tax returns by more than 100% over a three-year period. The Sixth Circuit upheld the assessment of a fraud penalty:

"Fraud cannot be lightly inferred but must be established by clear and convincing proof. * * * It is conceivable that taxpayers may make minor errors in their returns, or, owing to different or contra-

dictory theories of tax computation, calculate returns which differ greatly in result from the Commissioner's assessments. Here petitioners do not have that excuse. Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the government."

*Id.* at 989.

In *Halle v. Commissioner*, 175 F.2d 500 (2d Cir. 1949), cert. den. 338 U.S. 949, 70 S.Ct. 485, 94 L.Ed. 586 (1950), the taxpayer underreported his income in the amount of $184,943.96 over a ten-year period. The Second Circuit upheld a fraud penalty, stating:

"Although the burden was on the Commissioner to prove the fraudulent nature of the returns, we think he has fully borne this burden and that the evidence amply supports the Tax Court's finding in this respect. The deficiencies here were too many, too varied, too continuous and too excessive to be plausibly attributed to inadvertence or carelessness."

*Id.* at 503.

In our view, fraud is clearly evidenced in this case by the underreporting of gross sales by more than a half-million dollars over a 39-month period.

Appellant's next point raises a statute of limitations question.

Section 144.220 is the only statute in the sales tax law dealing specifically with a limitation on the authority of the Director to assess. It provides that:

"Except in the case of a fraudulent return, or neglect or refusal to make a return, every notice of additional amount proposed to be assessed hereunder shall be mailed to the person within two years after the return was filed or was required to be filed."

The statute patently contemplates that in the case of a fraudulent return the two-year limitation does not apply. This clearly indicates the legislature's intention to give the Director broad authority in these circumstances.

Appellant argues that § 516.130(2) applies to limit the authority of the Director to assess. It argues that because § 144.500 provides for a mandatory penalty of twenty-five per cent to be applied against the amount of tax found to be due and owing it is a penalty statute. Section 516.130 provides:

"Within three years:

"(1) An action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the nonpayment of money collected upon an execution or otherwise;

"(2) An action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state."

Section 516.100 provides:

"Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Section 516.100 states that the sections following it apply to limit the commencement of civil actions to within the periods prescribed *after the causes of action shall have accrued.*

■ It is a well-known and often-repeated rule of law that actions and proceedings not clearly within the terms of statutes of limitations cannot be brought in by reason of extending the application of the statute through construction. *Macon County v. Farmers' Trust Co.*, 325 Mo. 784, 793, 29 S.W.2d 1096, 1098 (1930); *Mergenthaler Linotype Co. v. Kebby*, 146 S.W.2d 595, 596 (Mo.1941); *Federal Dep. Ins. Corp. v. Farmers Bank of Newton*, 238 Mo.App. 350, 180 S.W.2d 532, 538 (1944).

■ It is another well-established rule of law that the statute of limitations does not begin to run until a cause of action accrues, and accrual does not occur until there exists the right of the injured party to bring and maintain a claim in a court of law. *Deming v. Williams*, 321 S.W.2d 720 (Mo.App.1959); *Keiser v. Wiedmer*, 283 S.W.2d 914 (Mo.App.1955).

■ The sales tax law establishes a mandatory procedure for the assessment of sales tax and it is not until this procedure has run its course that the state has the right to commence an action for taxes due and unpaid.

Section 144.240 provides that any person against whom an assessment is made may petition for reassessment within 30 days after notice of such assessment. The Director must then afford a hearing to the aggrieved party.

Section 144.261 provides:

"Any final decision, finding, order or ruling of the director, under the provisions of this chapter, is subject to judicial review in the manner provided by chapter 536, RSMo."

Section 536.100 provides:

"Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute; provided, however, that nothing in this chapter contained shall prevent any person from attacking any void order of an agency at any time or in any manner that would be proper in the absence of this section. Unreasonable delay on the part of any agency in deciding any contested case shall be grounds for an order of the court either compelling action by the agency or re-

moving the case to the court for decision."

■ The above statutes set forth a mandatory scheme for the process of collecting taxes alleged to be due and owing through assessment. Any suit to collect taxes based on assessment which remained subject to the above provisions for administrative and judicial review would be untimely.

Section 144.390, providing for an action at law on the part of the Director in the name of the state to recover unpaid taxes, provides in subsection 3:

"In every such action, a certificate by the director of revenue or his agent showing the name of the person, the date and amount of the assessment and the delinquency of the tax sued for, shall be prima facie evidence of the levy of said tax, of the delinquency, of the liability of the person and the nonpayment thereof, and of compliance by the director of revenue with all the provisions of section 144.010 to 144.510 with respect to the computation and levy of this tax, and in every such suit the process, pleadings and practice shall be, except as in sections 144.010 to 144.510 otherwise specifically provided, according to the provisions of the code of civil procedure."

■ The above subsection indicates that the legislature did not intend the Director to have the right to recover unpaid taxes by an action at law until a proper assessment has been made, i. e., until an assessment has been made that complies with the provisions of §§ 144.010 to 144.510 including the provisions for administrative and judicial review set forth in §§ 144.010 and 144.261 respectively. In conclusion, it should be abidingly clear that, in the case of one who has filed a fraudulent return, the Director does not have authority to request the Attorney General to commence an action at law to recover unpaid taxes until the Director's assessment has become final, i. e., not subject to further review—administrative or judicial.

■ The making of an assessment does not constitute the commencement of an action. Thus, the provisions of §§ 516.-100 to 516.370, which set out the limitation periods for the commencement of actions, have no application to the question here. In addition, under the fact situation we are considering, there is no provision in the sales tax law for a time limitation on the Director's authority to make an assessment. The legislature did provide in § 144.220 for a two-year limitation period on the Director's authority to make an additional assessment, but that section expressly excludes from its scope assessments which are made with respect to a fraudulent return. The fact that the legislature made such an express exclusion indicates that it did not intend to put a time limit on the Director's authority to assess those who file a fraudulent return.

■ In light of the settled principles of law set forth above, it is clear that any statute in Chapter 516 can apply only to limit the Director's authority to bring suit in a court of law within a given period from the time the assessment becomes final, i. e., when not subject to further administrative or judicial review. Therefore, no part of the assessment in this case is invalid by reason of its being outside the period of the statute of limitations.

Appellant's last point challenges the Director's assessment of interest. Appellant argues that § 144.170 provides that interest accrues on taxes not paid from the time those taxes are due and payable. This is correct. That section provides:

"All taxes not paid to the director of revenue by the person required to remit the same on the date when the same becomes due and payable to the director of revenue, shall bear interest at the rate of one percent per calendar month, or fraction thereof, from and after such date until paid."

■ Appellant, however, also argues that the taxes were not due and payable until 15 days after the Director's assessment of the delinquent taxes, or no earlier than September 30, 1976. For this argument, appellant relies on § 144.230, RSMo 1969, which provides:

"Any amount assessed by the director of revenue under the provisions of sections 144.010 to 144.510, together with the penalty, if any there be, shall be due and payable from the person to the director of revenue fifteen days after the service upon or mailing to the person of notice of such assessment."

In our view, § 144.230 is applicable to the assessment subsequent to the assessment date only and has no bearing on the interest which accrued on the debt owing from 1970 but not discovered until a subsequent time because of the fraudulent activities of the taxpayer.

The judgment is affirmed.

All concur.